# IN THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

IN RE:                                      Chapter 7 Proceeding

KIMBERLY VALENTI                            Case No. 08-53983

       Debtor                       Judge Marilyn Shea-Stonum

                                    Adversary Proceeding No. 09-5190

KIMBERLY VALENTI

       Plaintiff                    **STIPULATION OF FACTS**
                                            **OF PLAINTIFF, DEFENDANT, AND THE**
                                            **SUMMIT COUNTY TREASURER**
vs.

FIRST MORTGAGE STRATEGIES GROUP
et al
       Defendants

---

Now comes Plaintiff, Kimberly Valenti, First Mortgage Strategies Group and the Summit County Treasurer, through their respective counsel and as evidenced by their signatures hereon, Stipulate to the following facts, to wit:

1. On October 16, 1998 Kimberly A. Kutina (now Kimberly A. Valenti) and Robert I. Kutina signed a note and a mortgage with GreenPoint Mortgage Corp. for the property located at 5977 Ogilby Dr., Hudson, OH (hereinafter "the Property"),

2. Said mortgage was recorded in the Summit County Recorder's Office on October 16, 1998, (Official Instrument Number 54204416).

3. Kimberly A. Valenti (as Kimberly A. Kutina) divorced Robert L. Kutina and assumed here maiden name of Kimberly A. Valenti. She acquired title of the Property in her maiden name by quit claim from Robert L. Kutina

recorded on March 2, 1000. Kimberly A. Valenti transferred title to the Property to the Kimberly A. Valenti Trust, Kimberly A. Valenti, Trustor and Trustee by deed recorded on January 31, 2001. On February 28, 2001 another deed was recorded transferring title from Kimberly A. Valenti fka Kimberly A. Kutina to the The Kimberly A. Valenti Trust, Kimberly A. Valenti Trustor and Trustee.

4.  On or about September 22, 1999, GreenPoint Mortgage Corp. was purchased by GreenPoint Mortgage Funding, Inc. and a certificate of merger was filed with the New York Department of State. GreenPoint Mortgage Corp. thereafter ceased to be an active corporation at the time of filing said merger.

5.  On or about January 14, 2000, the Ohio Secretary of State issued a certificate stating that GreenPoint Mortgage Corp. was merged out of existence. GreenPoint Mortgage Corp. did not execute an assignment of mortgage document to GreenPoint Mortgage Funding, Inc.

6.  On May 30, 2007 GreenPoint Mortgage Funding, Inc. filed a foreclosure action in the Summit County, Ohio Court of Common Pleas Case No. 2007-05-3858, styled *GreenPoint Mortgage Funding, Inc. v. Robert L. Kutina & Kimberly A. Kuntia (nka Kimberly Valenti), et al.* Robert L. Kutina and Kimberly A. Kutina (nka Kimberly Valenti) did not file an Answer to the Foreclosure.

7.  On June 19, 2007, GreenPoint Mortgage Funding, Inc. as successor by merger to GreenPoint Mortgage Corp. executed an assignment of mortgage to First Mortgage Strategies Group, Inc. First Mortgage Strategies Group, Inc was not substituted as a named Plaintiff in the foreclosure action.

8.     On August 7, 2007, The Common Pleas Court entered a Default Judgment and Decree in Foreclosure against Robert L. Kutina and Kimberly A. Kutina (nka Kimberly Valenti) in the foreclosure action.

9.     On August 23, 2007, the assignment of mortgage from GreenPoint Mortgage Funding, Inc. as successor by merger to GreenPoint Mortgage Corp. to First Mortgage Strategics Group, Inc. was recorded.

10.    On September 4, 2007, a copy of the recorded assignment of mortgage was filed with the Common Pleas Court.

11.    The Common Pleas Court scheduled the property for Sheriff's Sale on March 28, 2008.

12.    On March 3, 2008, Robert L. Kutina and Kimberly A. Kutina (nka Kimberly Valenti) filed a Motion to Vacate Judgment and Decree of Foreclosure and Stay Sheriff's Sale. The Sheriff's Sale set for March 28, 2008 was cancelled.

13.    On March 17, 2008, GreenPoint Mortgage Funding, Inc. filed a Memo opposing the Motions.

14.    On May 19, 2008, the Court of Common Pleas granted the Motion to Vacate Judgment filed by Robert L. Kutina for lack of service of process. The Court denied the Motions to Vacate Judgment and Stay Sale filed by Kimberly Valenti.

15.    On June 18, 2008, Kimberly A. Kutina (nka Kimberly Valenti) filed a Notice of Appeal of the May 19, 2008 Entry denying her Motions to Vacate Judgment and Stay Sale.

16.    On October 30, 2008 Kimberly Valenti filed a Chapter 13 Bankruptcy Case No. 08-53983 staying the Appeal.

17. As of March 10, 2009, John A. Donofrio, Summit County Fiscal Officer, holds the first and best lien on the subject premises known as Parcel Number 30-00476, for real estate taxes, assessments and penalties accrued on the property.

18. The real estate taxes for the first half of 2009 were due February 19, 2010 and are unpaid to date in the amount of $2,039.96 plus a 10% penalty on the total amount. The real estate taxes for the second half of 2009 are due July 19, 2010 in the amount of $2039.96.

19. All matters of public record are stipulated to.

Respectfully submitted,

/s/ Donald P. Mitchell, Jr.
Donald P. Mitchell Jr., #0016178
Attorney for Debtor
3766 Fishcreek Rd., #267
Stow, Ohio 44224
(330) 297-7788
bankruptcyfiles@wmconnect.com

Approved:

/s/ Pamela S. Petas (per attached)

Pamela S. Petas (0058627)
Stacey A. O'Stafy (0070386)
Holly N. Wolf (0068847)
Manley Deas Kochalski LLC
PO Box 165028
Columbus, OH 43216-5028
614-220-5611 Fax: 614-627-8181
psp@mdk-llc.com
Attorneys for Defendant Creditor
First Mortgage Strategies Group

/s/ Regina M. VanVorous (per attached)

Sherri Bevan Walsh Prosecuting Attorney
Regina M. VanVorous (0020786)
Assistant Prosecuting Attorney Tax Division
Attorney for Defendant John A. Donofrio
Summit County Treasurer nka Summit Co.
Fiscal Officer
220 S. Balch Street, Ste. 118
Akron, OH 44302
330-643-8409 / Fax 330-643-8540
rvanvorous@summitoh.net

17.     As of March 10, 2009, John A. Donofrio, Summit County Fiscal Officer, holds the first and best lien on the subject premises known as Parcel Number 30-00476, for real estate taxes, assessments and penalties accrued on the property.

18.     The real estate taxes for the first half of 2009 were due February 19, 2010 and are unpaid to date in the amount of $2,039.96 plus a 10% penalty on the total amount. The real estate taxes for the second half of 2009 are due July 19, 2010 in the amount of $2039.96.

19.     All matters of public record are stipulated to.

Respectfully submitted,

/s/ Donald P. Mitchell, Jr.
Donald P. Mitchell Jr., #0016178
Attorney for Debtor
3766 Fishcreek Rd., #267
Stow, Ohio 44224
(330) 297-7788
bankruptcyfiles@wmconnect.com

Approved:

Pamela S. Petas (0058627)
Stacey A. O'Stafy (0070386)
Holly N. Wolf (0068847)
Manley Deas Kochalski LLC
PO Box 165028
Columbus, OH 43216-5028
614-220-5611 Fax: 614-627-8181
psp@mdk-llc.com
Attorneys for Defendant Creditor
First Mortgage Strategies Group

/s/ Regina M. VanVorous (per attached)

Sherri Bevan Walsh Prosecuting Attorney
Regina M. VanVorous (0020786)
Assistant Prosecuting Attorney Tax Division
Attorney for Defendant John A. Donofrio
Summit County Treasurer nka Summit Co.
Fiscal Officer
220 S. Balch Street, Ste. 118
Akron, OH 44302
330-643-8409 / Fax 330-643-8540
rvanvorous@summitoh.net

17.     On October 30, 2008 Kimberly Valenti filed a Chapter 13 Bankruptcy Case No. 08-53983 staying the Appeal.

18.     As of March 10, 2009, John A. Donofrio, Summit County Fiscal Officer, holds the first and best lien on the subject premises known as Parcel Number 30-00476, for real estate taxes, assessments and penalties accrued on the property.

19.     The real estate taxes for the first half of 2009 were due February 19, 2010 and are unpaid to date in the amount of $2,039.96 plus a 10% penalty on the total amount. The real estate taxes for the second half of 2009 are due July 19, 2010 in the amount of $2039.96.

20.     All matters of public record are stipulated to.

21.     No assignment was made by GreenPoint Mortgage Corp. to GreenPoint Mortgage Funding, Inc.

Respectfully submitted,

/s/ Donald P. Mitchell, Jr.
Donald P. Mitchell Jr., #0016178
Attorney for Debtor
3766 Fishcreek Rd., #267
Stow, Ohio 44224
(330) 297-7788
bankruptcyfiles@wmconnect.com

Approved:

Pamela S. Petas (0058627)
Stacey A. O'Stafy (0070386)
Holly N. Wolf (0068847)
Manley Deas Kochalski LLC
PO Box 165028
Columbus, OH 43216-5028
614-220-5611 Fax: 614-627-8181
psp@mdk-llc.com
Attorneys for Defendant Creditor
First Mortgage Strategies Group

Sherri Bevan Walsh Prosecuting Attorney
Regina M. VanVorous (0020786)
Assistant Prosecuting Attorney Tax Division
Attorney for Defendant John A. Donofrio
Summit County Treasurer nka Summit Co.
Fiscal Officer
220 S. Balch Street, Ste. 118
Akron, OH 44302
330-643-8409 / Fax 330-643-8540
rvanvorous@summitoh.net



# NOTE

3082435

OCTOBER 16 , 1996          CUYAHOGA          , OHIO
[Date]                     [City]            [State]

5977 OGILBY, HUDSON, OH 44236

[Property Address]

**1. BORROWER'S PROMISE TO PAY**

In return for a loan that I have received, I promise to pay U.S. $119,250.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

GreenPoint Mortgage Corp.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2. INTEREST**

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

**3. PAYMENTS**

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1ST    day of each month beginning on    DECEMBER 01 1996 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    NOVEMBER 01 , 2026    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at    3032 Parkway Plaza Boulevard, Building 9
Charlotte, NC 28217

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $895.89 .

**4. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**5. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**6. BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    fifteen    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5%    of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument

Form 3200 12/83
Amended 5/91

VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Page 1 of 2



3082435

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROBERT L. KUTINA                 -Borrower
SSN: 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

_____ (Seal)
KIMBERLY A. KUTINA               -Borrower
SSN: 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

_____ (Seal)
SSN:                             -Borrower

_____ (Seal)
SSN:                             -Borrower

(Sign Original Only)

-5R (9109).05                    Page 8 of 8                    Form 3200 12/83

**EXHIBIT B**

ENDRESS / LAWYERS TITLE

ORDER NO. 72294

AFTER RECORDING RETURN TO:
GreenPoint Mortgage Corp.
ATTN: Final Documentation
P.O. Box 195005
Charlotte, NC 28219-5005



54204416

ENDRESS/LAWYERS BOX

————— [Space Above This Line For Recording Data] —————

## OPEN - END MORTGAGE

3082435

THIS MORTGAGE ("Security Instrument") is given on    OCTOBER 16, 1998    . The mortgagor is

ROBERT L. KUTINA AND KIMBERLY A. KUTINA

whose current mailing address is
5977 OGILBY, HUDSON, OH 44236
("Borrower"). This Security Instrument is given to
GreenPoint Mortgage Corp.

which is organized and existing under the laws of    NEW YORK    , and whose
address is 5032 Parkway Plaza Boulevard, Building 8,
Charlotte, NC 28217    ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED NINETEEN THOUSAND TWO HUNDRED FIFTY AND 00/100

Dollars (U.S. $ 119250.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on    NOVEMBER 01, 2028    . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
SUMMIT    County, Ohio:
SITUATED IN THE CITY OF HUDSON, COUNTY OF SUMMIT AND STATE OF OHIO: AND
KNOWN AS BEING FFLOT 103 PLYMOUTH VILLAGE ALLOTMENT SECTION E AS RECORDED IN
PLAT BOOK 86 PAGE 14 OF SUMMIT COUNTY RECORDS, BE THE SAME MORE OR LESS, BUT
SUBJECT TO LEGAL HIGHWAYS

which has the address of    5977 OGILBY    HUDSON    [Street, City],
Ohio    44226    [Zip Code]    ("Property Address");

OHIO - Single Family -FNMA/FHLMC UNIFORM
INSTRUMENT    Form 3036  9/90
-6R(OH)(9403).01    Amended 3/94
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 8    Initials: RLK  KAK

1

3082435

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. **Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. **Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

-6R(OH) (9603).01

54204416

JAMES B MCCARTHY  SUMMIT CO AUDITOR

Form 3036 9/90

Initials: RLK KAK

2

3Q82435

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve



-6R(OH) (9409).01

54204416

Form 3036 9/00

Initials: _____

3

3002425

payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

9. Inspection. Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

10. Condemnation. The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

11. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. Loan Charges. If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

14. Notices. Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

15. Governing Law; Severability. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.



-6R(OH) (9409).01

54204416
Page: 4 of 5
10/15/1998 02:15P
MD     25.00

JAMES B MCCARTHY  SUMMIT CO AUDITOR

Form 3036 9/90

Initials PAK

3082435

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.



54204416
Pages: 5 of 8
10/15/1998 02:33P
HO

Form 3038 9/90

@ -6R(OH) (9403).01
JAMES B MCCARTHY  SUMMIT CO AUDITOR

3062025

22. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. **Advances to Protect Security.** This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.



54204416
Page: 6 of 6
10/16/1998 02:52P
MO                32.00
JAMES B MCCARTHY  SUMMIT CO AUDITOR

24. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] VA Rider
- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) [specify]
- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

Sharon L. Noe

_____ (Seal)
ROBERT L. KUTINA          -Borrower

Lorie E. Finney

_____ (Seal)
KIMBERLY A. KUTINA        -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

**STATE OF OHIO,**                Summit          County ss:

On this   16th   day of   October   , 1998   , before me, a Notary Public in and for said County and State, personally appeared   ROBERT L. KUTINA AND KIMBERLY A., KUTINA

, the individual(s) who executed the foregoing instrument and acknowledged that they did examine and read the same and did sign the foregoing instrument, and that the same is   their   free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

(Seal)                    Notary Public

7-12-02
OHIO

Prepared by:  MARCIA REDDEN

BR(OH) (9408).01                                      Form 3036 9/90
                                          Page 6 of 6

09-05190-mss    Doc 29    FILED 04/12/10    ENTERED 04/12/10 11:58:06    Page 14 of 109

**EXHIBIT C**

## State of New York }ss:
## Department of State

I hereby certify, that a certificate of merger of GREENPOINT MORTGAGE CORP., a NEW YORK corporation, with GREENPOINT MORTGAGE FUNDING, INC., a NEW YORK corporation, and adoption of the name of GREENPOINT MORTGAGE FUNDING, INC., was filed in this office on 09/22/1999.

and GREENPOINT MORTGAGE CORP. ceased to be an active corporation at the time of the filing of the said merger.

***

*Witness my hand and the official seal of the Department of State at the City of Albany, this 07th day of December one thousand nine hundred and ninety-nine.*

*Special Deputy Secretary of State*

199912080030 51

**RECEIVED**

JAN 14 2000

J. KENNETH BLACKWELL
SECRETARY OF STATE

Page 1

# NYS Department of State

**EXHIBIT D**

## Division of Corporations

**Entity Information**

Selected Entity Name: GREENPOINT MORTGAGE CORP.
Selected Entity Status Information

**Current Entity Name:** GREENPOINT MORTGAGE CORP.
**Initial DOS Filing Date:** OCTOBER 12, 1994
**County:** QUEENS
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** INACTIVE - Merged Out (Sep 30, 1999)

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
GREENPOINT MORTGAGE CORP.
ATTN: JAMES R MANION III
5032 PARKWAY PLAZA BLVD
CHARLOTTE, NORTH CAROLINA, 28217

**Chairman or Chief Executive Officer**
THOMAS S JOHNSON
90 PARK AVE
NEW YORK, NEW YORK, 10016

**Principal Executive Office**
GREENPOINT MORTGAGE CORP.
5032 PARKWAY PLAZA BLVD
CHARLOTTE, NORTH CAROLINA, 28217

**Registered Agent**
NONE

This office does not require or maintain information
regarding the names and addresses of officers,
shareholders or directors of a corporation.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 200 | No Par Value | |

*Stock information is applicable to domestic business corporations.

### Name History

| Filing Date | Name Type | Entity Name |
|---|---|---|
| OCT 12, 1994 | Actual | GREENPOINT MORTGAGE CORP. |

A **Fictitious** name must be used when the **Actual** name of a foreign entity is unavailable for use in New York State. The entity must use the fictitious name when conducting its activities or business in New York State.

NOTE: New York State does not issue organizational identification numbers.

Search Results                                      New Search

Division of Corporations, State Records and UCC Home Page    NYS Department of State Home Page

# NYS Department of State

## Division of Corporations

### Entity Information

Selected Entity Name: GREENPOINT MORTGAGE FUNDING, INC.
Selected Entity Status Information

**Current Entity Name:** GREENPOINT MORTGAGE FUNDING, INC.
**Initial DOS Filing Date:** MARCH 07, 1984
**County:** NEW YORK
**Jurisdiction:** NEW YORK
**Entity Type:** DOMESTIC BUSINESS CORPORATION
**Current Entity Status:** ACTIVE

Selected Entity Address Information

**DOS Process (Address to which DOS will mail process if accepted on behalf of the entity)**
C/O CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

**Chairman or Chief Executive Officer**
STEVEN M ABREU
100 WOOD HOLLOW DR
NOVATO, CALIFORNIA, 94945

**Principal Executive Office**
GREENPOINT MORTGAGE FUNDING, INC.
100 WOOD HOLLOW DR
NOVATO, CALIFORNIA, 94945

**Registered Agent**
CORPORATION SERVICE COMPANY
80 STATE STREET
ALBANY, NEW YORK, 12207-2543

This office does not require or maintain information
regarding the names and addresses of officers,
shareholders or directors of a corporation.

**\*Stock Information**

| # of Shares | Type of Stock | $ Value per Share |
|---|---|---|
| 1000 | Par Value | 1 |

EXHIBIT D

| | DATE | DOCUMENT NO | DESCRIPTION | | FILING | EXPED | PENALTY | CERT | COPY |
|---|---|---|---|---|---|---|---|---|---|
| 1. | 1/25/2000 | 200002000044 | MER MERGER/DOMESTIC | | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | | | | TOTAL | 10.00 | 0.00 | 0.00 | 0.00 | 0.00 |

**Return To:**
C T CORPORATION SYSTEM
ATTN A WEBSTER
17 S HIGH ST
COLUMBUS, OH 43215-0000

---------- cut along the dotted line ----------



# The State of Ohio
## ❀ Certificate ❀

### Secretary of State - J. Kenneth Blackwell

### 1084067

*It is hereby certified that the Secretary of State of Ohio has custody of the business records for GREENPOINT MORTGAGE FUNDING, INC. and that said business records show the filing and recording of:*

Document(s):
**MERGER/DOMESTIC**

Document No(s):
200002000044

United States of America
State of Ohio
Office of the Secretary of State



Witness my hand and the seal of the Secretary
of State at Columbus, Ohio, This 14th day of
January, A.D. 2000

*J. Kenneth Blackwell*
J. Kenneth Blackwell
Secretary of State

| DATE:<br>12/27/2007 | DOCUMENT ID<br>200736001516 | DESCRIPTION<br>DOMESTIC AGENT SUBSEQUENT<br>APPOINTMENT (AGS) | FILING<br>25.00 | EXPED<br>.00 | PENALTY<br>.00 | CERT<br>.00 | COPY<br>00 |
|---|---|---|---|---|---|---|---|

**Receipt**

This is not a bill. Please do not remit payment.

CSC-WILMINGTON
STE 400-GRACE KIRBY
2711 CENTERVILLE RD
WILMINGTON, DE 19808

# STATE OF OHIO
## CERTIFICATE
### Ohio Secretary of State, Jennifer Brunner

1084067

It is hereby certified that the Secretary of State of Ohio has custody of the business records for

**GREENPOINT MORTGAGE FUNDING, INC.**

and, that said business records show the filing and recording of:

Document(s)                                    Document No(s):
**DOMESTIC AGENT SUBSEQUENT APPOINTMENT**                    **200736001516**



United States of America
State of Ohio
Office of the Secretary of State

Witness my hand and the seal of
the Secretary of State at Columbus,
Ohio this 19th day of December,
A.D. 2007.

Ohio Secretary of State

Page 1

DANIEL M. HORRIGAN

2007 MAY 30 AM 8:05

**IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO**

SUMMIT COUNTY
CLERK OF COURTS

GreenPoint Mortgage Funding, Inc.
2300 Brookstone Center Parkway
Columbus, Georgia 31904

Plaintiff

vs.

Robert L. Kutina
5977 Ogilby Drive
Hudson, OH 44236

Kimberly A. Kutina
5977 Ogilby Drive
Hudson, OH 44236

Summit County Fiscal Officer
175 South Main Street
Akron, OH 44308

The Kimberly A. Valenti Trust, Kimberly
A. Valenti, Trustor and Trustee
5977 Ogilby Drive
Hudson, OH 44236

Huntington National Bank
Attention: Legal Department
41 South High Street
Columbus, OH 43216

Defendants.

Case No. 2007-05-3858

Judge ASSIGNED TO JUDGE STORMER

**COMPLAINT FOR FORECLOSURE**

**Jurisdiction and Venue**

1.    The Court has jurisdiction over this action and venue is appropriate because the Court and

the property that is the subject of this action are situated in the same county.

G:\Cases - TM\07-11389\Ohio foreclosure complaint-070524-CAL.wpd

## Background

2.  Robert L. Kutina and Kimberly A. Kutina executed the promissory note attached to this Complaint as an Exhibit (the "Note").

3.  Attached hereto as an Exhibit is a validly executed mortgage (the "Mortgage") that was executed in connection with the execution of the Note. The parties to the Mortgage intended that it attach to the entire fee simple interest in the property.

4.  The Note is in default because installment payments due on the Note have not been paid. As a result, covenants in the Mortgage have not been performed. Notice of default was given to the borrowers under the terms of the Note, and the Note was properly accelerated. A written notice was sent to the borrowers at the property address, or their last known address, informing them that they are in default under the Note and that if they do not pay the overdue amount by a certain date they will be required to pay the full amount of unpaid principal plus all interest on the unpaid principal plus costs and expenses. The deadline for the payment of the overdue amount passed without payment being made.

5.  The Mortgage was filed October 16, 1998, recorded at Official Instrument Number 54204416, Recorder's Office, Summit County, Ohio.

6.  The Mortgage conveys to Plaintiff an interest in the following property (the "Property"):

    5977 Ogilby Drive, Hudson, OH 44236, parcel number 3003379, routing number HU0044202002000, said Property being more particularly described as follows:

    > Situated in the City of Hudson, County of Summit and State of Ohio, and further described as follows:
    > And known as being Lot 103 Plymouth Village Allotment Section E as recorded in Plat Book 84, Page 14, Summit County Records.

7.  A title examination reveals that the other persons named as defendants in this action may

also have or claim an interest in the Property. The Preliminary Judicial Report attached to this Complaint as an Exhibit explains why these defendants may have or claim an interest in the Property.

## COUNT ONE

8. Plaintiff incorporates each of the preceding allegations into Count One by reference.

9. Plaintiff is the owner and holder of the Note.

10. Because the Note has been accelerated and is in default, Plaintiff is entitled to judgment against Robert L. Kutina and Kimberly A. Kutina for principal in the amount of $108,811.53, plus interest on the outstanding principal balance at the rate of 8.25% per annum from December 1, 2006, plus late charges, plus advances made for the payment of taxes, assessments, insurance premiums, or costs incurred for the protection of the mortgaged premises under Section 5301.233 of the Ohio Revised Code.

## COUNT TWO

11. Plaintiff incorporates each of the preceding allegations into Count Two by reference.

12. The Mortgage is a valid and subsisting first lien on the Property, subject only to any lien that may be held by the County Treasurer.

13. Plaintiff is the owner and holder of the Mortgage and is entitled to foreclose the Mortgage.

## PRAYER FOR RELIEF

14. Plaintiff prays for the following relief:

- judgment against Robert L. Kutina and Kimberly A. Kutina in the amount of $108,811.53, plus interest on outstanding principal balance due at the rate of 8.25% per annum from December 1, 2006, plus late charges, plus advances made

G:\Cases - TM\07-11389\Ohio foreclosure complaint-070524-CAL.wpd

for the payment of taxes, assessments, insurance premiums, or costs incurred for

the protection of the mortgaged premises under Section 5301.233 of the Ohio

Revised Code;

- a finding that the Mortgage is a valid and subsisting first lien on the Property,

  subject only to any lien that may be held by the County Treasurer;

- an order (1) foreclosing the equity of redemption and dower of all defendants

  named in this action, (2) requiring that the Property be sold free and clear of all

  liens, interests, and dower, (3) requiring all defendants to set up their liens or

  interest in the Property or be forever barred from asserting such liens or interests,

  (4) requiring that the proceeds of the sale of the Property be applied to pay all

  amounts due Plaintiff under the Note, and (5) granting Plaintiff all other relief,

  legal and equitable, as may be proper and necessary, including, for example, a writ

  of possession.

Respectfully submitted,

Matthew J. Richardson (0077157)
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH 43216-5028
Telephone: 614-222-4921
Fax: 614-220-5613
Email: mjr2@mdk-llc.com
Attorney for Plaintiff

**THIS COMMUNICATION IS AN ATTEMPT TO COLLECT A DEBT.
ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**



# NOTE

3082435

OCTOBER 16 , 1998          CUYAHOGA          , OHIO

[Date]                    [City]              [State]

5977 OGILBY, HUDSON, OH 44236

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $119250.00 (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

GreenPoint Mortgage Corp.

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 8.250%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1ST day of each month beginning on DECEMBER 01 1998 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on NOVEMBER 01 , 2028 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5032 Parkway Plaza Boulevard, Building 8 Charlotte, NC 28217

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $895.89

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE - Single Family - FNMA/FHLMC Uniform Instrument

Form 3200 12/83
Amended 5/91

VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Initials: [signature]          Page 1 of 2



3082435

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
ROBERT L. KUTINA                  -Borrower
SSN: 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

_____ (Seal)
KIMBERLY A. KUTINA                -Borrower
SSN: 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

_____ (Seal)
                                  -Borrower
SSN:

_____ (Seal)
                                  -Borrower
SSN:

(Sign Original Only)

-6R (9105).03          Page 2 of 2          Form 3200 12/83

ENDRESS / LAWYERS TITLE

ORDER NO. 77246



54204416

ENDRESS/LAWYERS BOX

OPEN - END MORTGAGE

AFTER RECORDED RETURN TO:
Greenfield Mortgage Corp.
ATTN: Final Documentation
P.O. Box 193945
Charlotte, NC 28219-3945

THIS MORTGAGE ("Security Instrument") is given on        OCTOBER 16, 1998        . The mortgagor is
ROBERT L. KOTLER AND KIMBERLY A. KOTLER

whose current mailing address is
8577 GUILMET, HUDSON, OH 44235
("Borrower"). This Security Instrument is given to
Greenfield Mortgage Corp.

which is organized and existing under the laws of        NEW YORK        , and whose
address is 5032 Parkway Plaza Boulevard, Building 8,
Charlotte, NC 28217        ("Lender"). Borrower owes Lender the principal sum of
ONE HUNDRED THIRTEEN THOUSAND TWO HUNDRED FIFTY AND 00/100
        Dollars (U.S. $ 113255.00        ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly
payments, with the full debt, if not paid earlier, due and payable on        NOVEMBER 01, 2028        . This Security
Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and
modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of
this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the
Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in
        SUMMIT        County, Ohio:

SITUATED INTHE CITY OF HUDSON, COUNTY OF SUMMIT AND STATE OF OHIO, AND
KNOWN AS BEING LOT 183 PLYMOUTH VILLAGE ALLOTMENT SECTION E AS RECORDED IN
PLAT BOOK 84 PAGE 16 OF SUMMIT COUNTY RECORDS, BE THE SAME MORE OR LESS, BUT
SUBJECT TO LEGAL HIGHWAYS

which has the address of        8577 GUILMET        ,        HUDSON        [Street, City],
Ohio        44236        [City, Code] ("Property Address");
OHIO - Single Family - FNMA/FHLMC UNIFORM
        INSTRUMENT        Form 3036 9/90
        Amended 3/94
Page 1 of 8        Initials RLK KAK

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest; Prepayment and Late Charges. Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

3. Application of Payments. Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.



(Page 3 of 6)

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve



payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.



54204416

16. Borrower's Copy. Borrower shall be given one conformed copy of the Note and of this Security Instrument.

17. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

18. Borrower's Right to Reinstate. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

19. Sale of Note; Change of Loan Servicer. The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

20. Hazardous Substances. Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, costs of title evidence.



22. Release. Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument without charge to Borrower. Borrower shall pay any recordation costs.

23. Advances to Protect Security. This Security Instrument shall secure the unpaid balance of advances made by Lender, with respect to the Property, for the payment of taxes, assessments, insurance premiums and costs incurred for the protection of the Property.



54294418

24. Riders to this Security Instrument. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)]

- [ ] Adjustable Rate Rider
- [ ] Graduated Payment Rider
- [ ] Balloon Rider
- [ ] VA Rider

- [ ] Condominium Rider
- [ ] Planned Unit Development Rider
- [ ] Rate Improvement Rider
- [ ] Other(s) [specify]

- [ ] 1-4 Family Rider
- [ ] Biweekly Payment Rider
- [ ] Second Home Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____          _____ (Seal)
Shannon L. Nook                                      ROBERT L. KUTINA               -Borrower

_____          _____ (Seal)
Maria E. Irwin                                       KIMBERLY A. KUTINA             -Borrower

_____ (Seal)     _____ (Seal)
                                 -Borrower                                   -Borrower

STATE OF OHIO,                              Summit          County ss:

On this   16th   day of   October   , 1998 , before me, a Notary Public in and for said County and State, personally appeared   ROBERT L. KUTINA AND KIMBERLY A. KUTINA

, the individual(s) who executed the foregoing instrument and acknowledged that they did examine and read the same and did sign the foregoing instrument, and that the same is   their   free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:                     _____
                                                    Notary Public

                    "OHIO"                  Prepared by: MARCIA EGDORF
                    7-18-02

                                                                  Form 3036  9/90

# PRELIMINARY JUDICIAL REPORT

Number 901-Z010026

 **LandAmerica Commonwealth**

Commonwealth Land Title Insurance Company is a member of the
LandAmerica family of title insurance underwriters

**FILE NUMBER**
07-11389

Guaranteed Party Name: **Manley Deas Kochalski LLC**
Guaranteed Party Address: **P. O. Box 165028**
City, State Zip Code: **Columbus, OH 43216-5028**

Pursuant to your request for a Preliminary Judicial Report (hereinafter "the Report") for use in judicial proceedings, COMMONWEALTH LAND TITLE INSURANCE COMPANY (hereinafter "the Company") hereby guarantees in an amount not to exceed _____ **$108,811.53**
that it has examined the public records in _____**Summit**_____
County, Ohio as to the land described in Schedule A., that the record title to the land is at the date hereof vested in

**The Kimberly A. Valenti Trust, Kimberly A. Valenti, Trustor and Trustee**

by instrument recorded as set forth on the attached page, and free from all encumbrances, liens or defects of record, except as shown in Schedule B.

This is a guarantee of the record title only and is made for the use and benefit of the Guaranteed Party and the purchaser at judicial sale thereunder and is subject to the Exclusions from Coverage, the Exceptions contained in Schedule B and the Conditions and Stipulations contained herein.

This Report shall not be valid or binding until it has been signed by either an authorized agent or representative of the Company and Schedules A and B have been attached hereto.

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Countersigned:

By: _____
Nicole P. Bontrager
Authorized Officer or Agent

By: _____Janet A. Alpert_____
President

Attest: _____L. Chadwick Perrine_____ Secretary

## EXCLUSIONS FROM COVERAGE

1. The Company assumes no liability under this Report for any loss, cost or damage resulting from any physical condition of the Land.

2. The Company assumes no liability under this Report for any loss, cost or damage resulting from any typographical, clerical or other errors in the Public Records, including but not limited to: mis-indexing, misspellings or any other misinformation contained therein.

3. The Company assumes no liability under this Report for matters affecting title subsequent to the date of the Report or the Final Judicial Report or any supplement thereto.

4. The Company assumes no liability under this Report for the proper form or execution of any pleadings or other documents to be filed in any judicial proceedings.

5. The Company assumes no liability under this Report for any loss, cost or damage resulting from the failure to complete service on any parties shown in Schedule B of the Preliminary Judicial Report and the Final Judicial Report or any Supplemental Report issued thereto.

Preliminary Judicial Report
**Form 1007-1Z**

**ORIGINAL**

PJR 10/04

**LANDAMERICA TITLE INSURANCE COMPANY**

ORDER NO. 901-Z010026

**PRELIMINARY JUDICIAL REPORT**
**SCHEDULE A**
**DESCRIPTION OF LAND**

Situated in the City of Hudson, County of Summit and State of Ohio, and further described as follows:
And known as being Lot 103 Plymouth Village Allotment Section E as recorded in Plat Book 84, Page 14, Summit County Records.

**SOURCE OF TITLE**

**TITLE ACQUIRED BY:**
The Kimberly A. Valenti Trust, Kimberly A. Valenti, Trustor and Trustee acquired title by virtue of a deed from Kimberly A. Valenti, fka Kimberly A. Kutina, unmarried, dated February 20, 2001, filed February 28, 2001, recorded at Official Instrument Number 54516582, Recorder's Office, Summit County, Ohio,

The Kimberly A. Valenti Trust, Kimberly A. Valenti, Trustor and Trustee acquired title by virtue of a deed from Kimberly A. Valenti, unmarried, dated January 8, 2001, filed January 31, 2001, recorded at Official Instrument Number 54507859, Recorder's Office, Summit County, Ohio,

Kimberly A. Kutina acquired title by virtue of a deed from Robert L. Kutina, husband of Grantee, dated March 2, 1999, filed March 2, 1999, recorded at Official Instrument Number 54259342, Recorder's Office, Summit County, Ohio,

Robert L. Kutina and Kimberly A. Kutina acquired title, with rights of survivorship, by virtue of a deed from Steven E. Beall and Sarah C. Beall, husband and wife, dated September 4, 1998, filed October 16, 1998, recorded at Official Instrument Number 54204415, Recorder's Office, Summit County, Ohio,

and free from all encumbrances, liens or defects, except as shown in Schedule B.

09-05190-mss    Doc 29    FILED 04/12/10    ENTERED 04/12/10 11:58:06    Page 34 of 109

**SCHEDULE B**

The matters shown below are exceptions to this Preliminary Judicial Report and the Company assumes no liability arising therefrom.

1. TAX INFORMATION for 2007 and subsequent years:

   The property stands charged on the Summit County Auditor's Duplicate in the name of Kimberly A. Valenti, Trustee. It carries parcel number 3003379 and has a physical street address of 5977 Ogilby Drive, Hudson, OH 44236.

   **TOTAL VALUATION:** $67,560.00 (Land: $10,990.00, Building: $56,570.00).

   The Treasurer has a first lien for taxes in an amount to be determined.

   Taxes or assessments approved, levied or enacted by the State, County, Municipality, Township or similar taxing authority, but not yet certified to the tax duplicate of the County in which the land is situated, including any retroactive increases in taxes or assessments resulting from any retroactive increase in the valuation of the land by the State County, Municipality, Township or other taxing authority.

2. Mortgage in favor of GreenPoint Mortgage Corp., 5032 Parkway Plaza Boulevard, Building 8, Charlotte, NC 28217, from Robert L. Kutina and Kimberly A. Kutina, no marital status shown, in the amount of $119,250.00, filed October 16, 1998, recorded at Official Instrument Number 54204416, Recorder's Office, Summit County, Ohio.

3. Mortgage in favor of Huntington National Bank, 550 Centreview Blvd., Crestview Hills, KY 41017, from Robert L. Kutina and Kimberly A. Kutina, husband and wife, in the amount of $15,100.00, filed January 7, 1999, recorded at Official Instrument Number 54237314, Recorder's Office, Summit County, Ohio.

4. An examination of the PACER index of the United States Bankruptcy Court, Northern and Southern Districts of Ohio, reflects the following: Robert L. Kutina and Kimberly A. Kutina, 5977 Ogilby, Hudson, OH 44236, filed a Chapter 7 Petition for Bankruptcy in the United States Bankruptcy Court, Northern District of Ohio, Eastern Division, Case No. 99-53062, on October 6, 1999; the case was terminated on August 2, 2000; the case was dismissed on March 7, 2000.

5. There is a domestic relations action of record in the Summit County Common Pleas Court, Case No. DR-1999-11-2634, between Kimberly A. Kutina, 5977 Ogelby Drive, Hudson, OH 44236, and Robert L. Kutina, 15801 Edgewood, Maple Heights, OH 44236. Subject to the terms and conditions as set forth in the above case.

6. Easements, conditions, reservations, covenants and restrictions affecting premises described in Schedule A.

No examination has been made for any unpaid sewer or water services.

NOTE: The Policy(s) of insurance may contain a clause permitting arbitration of claims at the request of either the Insured or the Company. Upon request, the Company will provide a copy of this clause and the accompanying arbitration rules prior to the closing of the transaction.

This is a guarantee of record title only and is made for the use and benefit of all parties to said proceedings, and the purchaser at judicial sale thereunder.

Dated: May 7, 2007, at 7:59 A.M.

09-05190-mss    Doc 29    FILED 04/12/10    ENTERED 04/12/10 11:58:06    Page 36 of 109

# LAND AMERICA TITLE INSURANCE COMPANY

Number 901-Z010026
File Number 07-11389

## SCHEDULE B

LAND AMERICA TITLE INSURANCE COMPANY assumes no liability for matters affecting title subsequent to the date hereof nor does the Company assume responsibility for the proper form or execution of any documents to be filed unless the same are approved by the Company.

Should you require full coverage, including matters not appearing of record, a Policy of Title Insurance should be ordered.

**IN WITNESS WHEREOF,** LAND AMERICA TITLE INSURANCE COMPANY has caused its corporate name to be hereunto affixed:

LAND AMERICA TITLE INSURANCE COMPANY

Countersigned:

Nicole P. Bontrager, Agent

09-05190-mss    Doc 29    FILED 04/12/10    ENTERED 04/12/10 11:58:06    Page 37 of 109

## CONDITIONS AND STIPULATIONS
## OF THIS PRELIMINARY JUDICIAL REPORT

1.  Definition of Terms

    "Guaranteed Party": The party or parties named herein or the purchaser at judicial sale.

    "Guaranteed Claimant": Guaranteed Party claiming loss or damage hereunder.

    "Land": The land described specifically or by reference in Schedule A, and improvements affixed thereto, which by law constitute real property; provided however the term "land" does not include any property beyond the lines of the area specifically described or referred to in Schedule A, nor any right, title, interest, estate, or easement in abutting streets, roads, avenues, lanes, ways or waterways.

    "Public Records": Those records under state statute which impart constructive notice of matters relating to real property to purchasers for value without knowledge and which are required by law to be maintained in the following public offices in the County in which the land is situated:
    - a.) The County Recorder;
    - b.) Clerk of Court of Common Pleas;
    - c.) Probate Court, excluding adoption, birth, death and marriage records;
    - d.) Any other court located within the County having jurisdiction over land in Schedule A;
    - e.) Sheriff for land levies;
    - f.) County Treasurers' latest certified tax duplicate, for taxes and assessments shown thereon as of the date of issuance of this preliminary judicial report.

2.  Determination of Liability

    This Report together with any Final Judicial Report or any Supplement thereto, issued by the Company is the entire contract between the Guaranteed Party and the Company.

    Any claim of monetary loss or damage, whether or not based on negligence, and which arises out of the status of the title to the estate or interest guaranteed hereby or any action asserting such claim, shall be restricted to this Report.

3.  Liability of Company

    This Report is a guarantee of the record title of the land only, as disclosed by an examination of the Public Records herein defined in the chain of title ownership.

4.  Notice of Claim to be given by Guaranteed Claimant

    In case knowledge shall come to the Guaranteed Party of any lien, encumbrance, defect, or other claim of title guaranteed against and not excepted in this Report, whether in a legal proceeding or otherwise, the Guaranteed Party shall notify Company promptly in writing and secure to the Company the right to oppose such proceeding or claim, or to remove said lien, encumbrance or defect at its own cost. Any action for the payment of any loss under this Report must be commenced within one year after such loss is sustained. A failure to furnish a statement of loss or damage and to commence such action within the time herein before specified shall be a conclusive bar against the maintenance of any action under this Report.

5.  Extent of Liability

    The liability of the Company shall in no case exceed in all the amount stated herein and shall in all cases be limited to the actual loss, including but not limited to attorneys fees and costs of defense, only of the Guaranteed Party. Any and all payments under this Report shall reduce the amount of this Report pro tanto and the Company's liability shall terminate when the total amount of the Report has been paid.

6.  Options to Pay or Otherwise Settle Claims: Termination of Liability

    The Company in its sole discretion shall have the following options:

    a.) To pay or tender to the Guaranteed Claimant the amount of the Report or the balance remaining thereof, less any attorneys fees, costs or expenses paid by the Company to the date of tender. If this option is exercised all liability of the Company under this Report terminates including but not limited to any liability for attorneys fees or any costs of defense or prosecution of any litigation.

    b.) To pay or otherwise settle with other parties for or in the name of the Guaranteed Claimant any claims guaranteed by this Report.

    c.) To continue, re-open or initiate any judicial proceeding in order to adjudicate any claim covered by this Report. The Company shall have the right to select counsel of its choice (subject to the right of the Guaranteed Claimant to object for reasonable cause) to represent the Guaranteed Claimant and will not pay the fees of any other counsel.

    d.) To pay or tender to the Guaranteed Claimant the difference between the value of the estate or interest as guaranteed and the value of the estate or interest subject to the defect, lien, or encumbrance guaranteed against by this Report.

7.  Notices

    All notices required to be given the Company shall be given promptly and any statements in writing required to be furnished the Company shall be addressed to Commonwealth Land Title Insurance Company, c/o LandAmerica Financial Group, Inc. at its office, 5600 Cox Road, Glen Allen, VA 23060.

## EXCLUSIONS FROM COVERAGE

1.  The Company assumes no liability under this Report for any loss, cost or damage resulting from any physical condition of the Land.

2.  The Company assumes no liability under this Report for any loss, cost or damage resulting from any typographical, clerical or other errors in the Public Records, including but not limited to: mis-indexing, misspellings or any other misinformation contained therein.

3.  The Company assumes un liability under this Report for matters affecting title subsequent to the date of the Report or the Final Judicial Report or any supplement thereto.

4.  The Company assumes no liability under this Report for the proper form or execution of any pleadings or other documents to be filed in any judicial proceedings.

5.  The Company assumes no liability under this Report for any loss, cost or damage resulting from the failure to complete service on any parties shown in Schedule B of the Preliminary Judicial Report and the Final Judicial Report or any Supplemental Report issued thereto.

After recording, please return to
MANLEY DEAS KOCHALSKI LLC
P.O. Box 185028
Columbus, Ohio 43218-5028
File number:
07-16751

## ASSIGNMENT OF OPEN-END MORTGAGE

KNOW THAT GREENPOINT MORTGAGE FUNDING, INC., AS SUCCESSOR-BY-MERGER TO GREENPOINT MORTGAGE CORP., having an office at 265 Broadhollow Road, Melville, New York 11747, Assignor,
in consideration of the sum of: Ten and 00/100 Dollars ($10.00) and other good and valuable consideration

paid by First Mortgage Strategies Group, Inc., having an office at 1052 Brookfield Road, Memphis, Tennessee 38119,
Assignee,

hereby assigns unto the Assignee, without recourse, representation or warranty of any kind, a certain open-end mortgage, dated October 16, 1998 made by Robert L. Kutina and Kimberly A. Kutina to GREENPOINT MORTGAGE CORP. in the principal amount of ONE HUNDRED NINETEEN THOUSAND TWO HUNDRED FIFTY AND 00/100 DOLLARS ($119,250.00) and recorded in the Office of the Clerk of the County of Summit on October 16, 1998 as Instrument Number 54204416, covering premises known as 5977 Ogilby Drive, Hudson, Ohio 44236.

Assessor's Parcel Number: 30-00476                    ＊no marital status shown

TOGETHER with the bond(s), note(s) or obligation(s) described in said open-end mortgage and the moneys due and interest due and to become due thereon.

TO HAVE AND TO HOLD the same unto the Assignee, and to the successors, legal representatives and assigns of the Assignee forever.

This Assignment is made and accepted without covenant, express or implied, and without recourse to the Assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment to be effective as of the 19th day of June, 2007.

GREENPOINT MORTGAGE FUNDING, INC.,
AS SUCCESSOR-BY-MERGER TO
GREENPOINT MORTGAGE CORP.

By: _____
Roseanne Riedel
Vice President

STATE OF NEW YORK       )
                         )SS.:
COUNTY OF SUFFOLK        )

On the _18_ day of June in the year 2007, before me, the undersigned, personally appeared Roseanne Riedel, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument, and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual that the person upon behalf of which the individual acted, executed the instrument.

ROSE A. FLORIO
Notary Public, State of New York
No. 5031103
Qualified in Nassau County
Commission Expires July 23, 20_10_

_____
Notary Public

PREPARED BY LUSKIN, STERN & EISLER LLP

55472795
Pg: 1 of 2
06/23/2007 07:31
AS                    32.00

John A Donofrio, Summit Fiscal Officer

**COPY**

**EXHIBIT G**

**IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO**

| | |
|---|---|
| GreenPoint Mortgage Funding, Inc. | Case No. CV-2007-05-3858 |
| **Plaintiff,** | **Judge Elinore Marsh Stormer** |
| **vs.** | **JUDGMENT ENTRY AND DECREE IN FORECLOSURE** |
| Robert L. Kutina, et al. | |
| **Defendants.** | |

This matter is before the Court on Plaintiff's Motion for Default Judgment. The real

property that is the subject of this foreclosure action (the "Property") is as follows:

> Situated in the City of Hudson, County of Summit and State of Ohio, and further
> described as follows:
> And known as being Lot 103 Plymouth Village Allotment Section E as recorded
> in Plat Book 84, Page 14, Summit County Records.

In response to the Motion for Default Judgment, the Court finds that Robert L. Kutina,

Kimberly A. Kutina and The Kimberly A. Valenti Trust, Kimberly A. Valenti, Trustor and

Trustee have been served with a Summons and Complaint but are in default for failure to file an

Answer or other responsive pleading. As a result, with respect to such defendants, the Court

hereby grants Plaintiff's Motion for Default Judgment and enters judgment in favor of Plaintiff

for the relief sought by Plaintiff in its Complaint.

The Court acknowledges that Huntington National Bank has filed an Answer claiming an

interest in the Property by virtue of a mortgage in the amount of $15,100.00, filed January 7,

1999, recorded at Official Instrument Number 54237314, Recorder's Office, Summit County,

Ohio. The Court finds that such interest is inferior and junior in priority to the mortgage held by

E42

Plaintiff. Such interest shall transfer to the proceeds of the sale of the Property, and all defendants who have filed an Answer claiming an interest in the Property shall have the right to seek payment from the proceeds of the sale of the Property. Such interest shall be released from the title to the Property upon confirmation of the sale to ensure that the buyer obtains title to the Property free and clear of all interests.

The Court finds that Robert L. Kutina and Kimberly A. Kutina executed the promissory note referenced in the Complaint (the "Note") and therefore promised, among other things, to make monthly payments on or before the date such payments were due. The Court further finds that Plaintiff is the owner and holder of the Note and that the sums due under the Note were accelerated in accordance with the terms of the Note and Mortgage. The Court further finds that Robert L. Kutina and Kimberly A. Kutina executed and delivered the mortgage referenced in the Complaint (the "Mortgage"), that Plaintiff is the owner and holder of the Mortgage, and that the Mortgage secures the amounts due under the Note.

The Court finds that the Note and Mortgage are in default because payments required to be made under the Note and Mortgage have not been made. The Court further finds that the conditions of the Mortgage have broken, the break is absolute, and Plaintiff is entitled to have the equity of redemption and dower of the current title holders foreclosed.

The Court further finds that there is due on the Note principal in the amount of $108,811.53 plus interest on the principal amount at the rate of 8.25% per annum from December 1, 2006. The Court further finds that there is due on the Note all late charges imposed under the Note, all advances made for the payment of real estate taxes and assessments and insurance premiums, and all costs and expenses incurred for the enforcement of the Note and Mortgage, except to the extent the payment of one or more specific such items is prohibited by Ohio law.

G:\Cases - TM\07-16751\default judgment-070731-AVU.wpd

As a result, the Court hereby enters judgment for the amount due on the Note against Robert L. Kutina and Kimberly A. Kutina.

The Court finds that the Mortgage was recorded with the County Recorder and is a valid and subsisting first mortgage on the Property. The Court further finds that the parties to the Mortgage intended that it attach to the entire fee simple interest in the property. Plaintiff's Mortgage is, however, junior in priority under Ohio law to the lien held by the County Treasurer to secure the payment of real estate taxes and assessments. All amounts payable under Section 323.47 of the Ohio Revised Code shall be paid from the proceeds of the sale before any distribution is made to other lien holders.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that unless the sums found to be due to Plaintiff are fully paid within three (3) days from the date of the entry of this decree, the equity of redemption of the defendant title holders in the Property shall be foreclosed and the Property shall be sold free of the interests of all parties to this action. In addition, an order of sale shall issue to the Sheriff of Summit County, directing him to appraise, advertise and sell the Property according to the law and the orders of this Court and to report his proceedings to this Court.

Notice of the time and place of the sale of the Property shall be given to all persons who have an interest in the Property according to the provisions of Section 2329.26 of the Ohio Revised Code.

Following the sale of the Property, the proceeds shall be distributed in the following order of priority:

- First, the Clerk of Courts shall be paid for all costs of this action.

- Second, the Summit County Treasurer shall be paid for all unpaid taxes,

G:\Cases - TM\07-16751\default judgment-070731-AVU.wpd

assessments, interest, and penalties on the Property.

- Third, Plaintiff shall be paid principal in the amount of $108,811.53 plus interest on the principal amount at the rate of 8.25% per annum from December 1, 2006, all late charges due under the Note and Mortgage, all advances made for the payment of real estate taxes and assessments and insurance premiums, and all costs and expenses incurred for the enforcement of the Note and Mortgage, except to the extent the payment of one or more specific such items is prohibited by Ohio law.

- Fourth, Defendant Huntington National Bank shall be paid principal in the amount of $9,766.86 plus interest on the principal amount at the rate of 7.74% per annum from June 29, 2002, all late charges due under the Note and Mortgage, all advances made for the payment of real estate taxes and assessments and insurance premiums, and all costs and expenses incurred for the enforcement of the Note and Mortgage, except to the extent the payment of one or more specific such items is prohibited by Ohio law.

- Fifth, the balance of the proceeds, if any, shall be held pending further order of the Court.

**IT IS FURTHER ORDERED** that the Sheriff shall send counsel for the party requesting the Order of Sale a copy of the publication notice promptly upon its first publication.

There is no just reason for delay in entering Judgment as aforesaid.

**IT IS SO ORDERED.**

————————————————————
Judge Elinore Marsh Stormer
Common Pleas Judge

G:\Cases - TM\07-16751\default judgment-070731-AVU.wpd

Approved:

Matthew J. Richardson (0077157)
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH 43216-5028
Telephone: 614-222-4921
Fax: 614-220-5613
Email: mjr2@mdk-llc.com
Attorney for Plaintiff

**circulating for approval** on 7-31-07

David W. Cliffe
Attorney for Huntington National Bank
525 Vine Street, Suite 800
Cincinnati, OH 45202
(513) 723-2230

DANIEL M. HORRIGAN
IN THE COURT OF COMMON PLEAS
2007 SEP -4 PM 3:44 SUMMIT COUNTY, OHIO

SUMMIT COUNTY
CLERK OF COURTS

| | |
|---|---|
| GreenPoint Mortgage Funding, Inc. | Case No. CV-2007-05-3858 |
| **Plaintiff,** | Judge Elinore M. Stormer |
| vs. | **NOTICE OF FILING OF** |
| Robert L. Kutina, et al. | **ASSIGNMENT OF MORTGAGE** |
| **Defendants.** | |

Attached hereto as Exhibit A is a recorded assignment of mortgage in reference to the above captioned case.

Respectfully submitted,

Matthew J. Richardson (0077157)
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH 43216-5028
Telephone: 614-222-4921
Fax: 614-220-5613
Email: mjr2@mdk-llc.com
Attorney for Plaintiff

E27

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Filing of

Assignment of Mortgage was sent to the following by ordinary U.S. Mail, postage prepaid,

this _____ day of August, 2007:

Robert L. Kutina
5977 Ogilby Drive
Hudson, OH 44236

Kimberly A. Kutina
5977 Ogilby Drive
Hudson, OH 44236

The Kimberly A. Valenti Trust, Kimberly A.
Valenti, Trustor and Trustee
5977 Ogilby Drive
Hudson, OH 44236

Summit County Fiscal Officer
175 South Main Street
Akron, OH 44308

David W. Cliffe
Attorney for Huntington National Bank
525 Vine Street
Suite 800
Cincinnati, OH 45202

Matthew J. Richardson

After recording, please return to
MANLEY DEAS KOCHALSKI LLC
P.O. Box 165028
Columbus, Ohio 43216-5028
File number
07-46751

(ENV)

**ASSIGNMENT OF OPEN-END MORTGAGE**

KNOW THAT GREENPOINT MORTGAGE FUNDING, INC., AS SUCCESSOR-BY-
MERGER TO GREENPOINT MORTGAGE CORP., having an office at 265 Broadhollow
Road, Melville, New York 11747, Assignor,
in consideration of the sum of: Ten and 00/100 Dollars ($10.00) and other good and valuable
consideration

paid by First Mortgage Strategies Group, Inc., having an office et 1052 Brookfield Road,
Memphis, Tennessee 38119,
Assignee,

hereby assigns unto the Assignee, without recourse, representation or warranty of any kind, a
certain open-end mortgage, dated October 16, 1998 made by Robert L. Kutina and Kimberly A.
Kutina to GREENPOINT MORTGAGE CORP. in the principal amount of ONE HUNDRED
NINETEEN THOUSAND TWO HUNDRED FIFTY AND 00/100 DOLLARS ($119,250.00) and
recorded in the Office of the Clerk of the County of Summit on October 16, 1998 as Instrument
Number 54204416, covering premises known as 5977 Ogilby Drive, Hudson, Ohio 44236.

Assessor's Parcel Number: 30-00476                    *no marital status shown

TOGETHER with the bond(s), note(s) or obligation(s) described in said open-end mortgage and
the moneys due and interest due and to become due thereon.

TO HAVE AND TO HOLD the same unto the Assignee, and to the successors, legal
representatives and assigns of the Assignee forever.

This Assignment is made and accepted without covenant, express or implied, and without recourse
to the Assignor in any event whatsoever.

IN WITNESS WHEREOF, the Assignor has duly executed this Assignment to be effective as of
the 19th day of June, 2007.

GREENPOINT MORTGAGE FUNDING, INC.,
AS SUCCESSOR-BY-MERGER TO
GREENPOINT MORTGAGE CORP.

By: _____
Roseanne Riedel
Vice President

STATE OF NEW YORK )
                   )SS.:
COUNTY OF SUFFOLK  )

On the _18_ day of June in the year 2007, before me, the undersigned, personally appeared
Roseanne Riedel, personally known to me or proved to me on the basis of satisfactory evidence to
be the individual whose name is subscribed to the within instrument, and acknowledged to me that
she executed the same in her capacity, and that by her signature on the instrument, the individual,
or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

ROSE A. FLORIO
Notary Public, State of New York
No. 5031103
Qualified in Nassau County
Commission Expires July 23, 20 10

PREPARED BY LUSKIN, STERN & EISLER LLP

RESERVE THIS SPACE
FOR USE OF RECORDING
OFFICE

GREENPOINT MORTGAGE FUNDING, INC., AS
SUCCESSOR-BY-MERGER TO GREENPOINT
MORTGAGE CORP.

TO

FIRST MORTGAGE STRATEGIES GROUP, INC.

ASSIGNMENT OF OPEN-END MORTGAGE

ASSESSOR'S PARCEL NUMBER: 30-00476
COUNTY: Summit

COMPARED

LIBER
PAGE

First Mortgage Strategies Group, Inc.
1052 Brookfield Road
Memphis, Tennessee 38119



55472795
Pg: 2 of 2
05/23/2007 07:30
AS                      32.00
John A Donofrio, Summit Fiscal Officer

EXHIBIT I

DANIEL M. HORRIGAN

2008 MAR -3 A

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
GENERAL DIVION
SUMMIT COUNTY, OHIO

GREENPOINT MORTGAGE FUNDING, INC,    ) CASE NO.: CV-2007-05-3858
                      )
         Plaintiff,                ) Judge Elinore Marsh-Stormer
                      )
            vs.                   )
                      )
ROBERT L. KUTINA, et al.          ) **60(B) MOTION TO VACATE**
                      ) **JUDGMENT ENTRY ORDER**
         Defendant.             ) **OF AUGUST 9, 2007**
                      ) **(JURY DEMAND ENDORSED )**
                      ) **(EREIN)**

## ANSWER

Now comes the defendant, Kimberly A. Valenti, Trustee of the Kimberly A. Valenti Trust, and through her attorney Donald P. Mitchell, Jr., moves the Court to vacate the Judgment Entry Order of August 9, 2007 and to stay the Sheriff's Sale of the Property at 5977 Ogilby Drive, Hudson, Ohio 44236, set for March 28, 2008 for the reasons hereafter set forth:

Civil Rules 60(B) allows the Court to vacate a judgment for the following reasons:

Upon motion and open such terms as case just, the Court may releve a party or his representative from a Final Judgment Order or proceeding for the following reasons:

1.   Mistakes, inadvertence, surprise or excusable neglect;

2.   New discovered evidence;

3.   Fraud, misrepresentation or other misconduct on an adverse party;

4.   Any other reasons justifying relief from the judgment.

COPY

1.    In this case, Plaintiff did not own the mortgage when Plaintiff took judgment and therefore did not have standing and failed to have a claims for which relief can be granted;

2.    Robert Kutina, Defendant herein was never served, although the court made finding that he was served, based upon a mistaken affidavit of Plaintiff's;

3.    <u>Mistaken inadvertence excusable neglect</u>; Defendant, Kimberly A. Kutina, k.n.a., Kimberly A. Valenti, Trustee of the Kimberly A. Valenti Trust, gave the complaint that she was served with to Attorney James to handle, and believed he was going to file an answer and defend the suit, and subsequently has learned that there must have been a misunderstanding as an answer was never filed resulting in mistake, inadvertence or excusable neglect because he did not file an answer nor did he defend the suit.

4.    The Affidavit (of June 26, 2007), used to support summary judgment is a false and fraudulent misrepresentation because Plaintiff did not own the mortgage or note at the time.

The facts and law regarding these defenses are as follows:

### POINT ONE

1.    Plaintiff did not own the mortgages and did not have standing to take judgment, and fails to state a claim for which relief can be granted; (Duetsche Bank, vs. Carole A. Moore, Case No. 1:07 CV 02202CAB, Northern District of Ohio Federal Court) Plaintiff Green Point Mortgage Funding Inc, is located at 2300 Brook Stone Center Parkway, Columbia, Georgia and filed a foreclosure against Defendant's on May 30, 2007.

COPY

2.  The actual mortgage is in the name of a different entity, to wit: GreenPoint Mortgage Corporation at 5032 Parkway Plaza Blvd., Building 8., Charlotte, North Carolina. Plaintiff never owned the mortgage, and at best, only had security interest.

3.  There is no recording of an assignment from GreenPoint Mortgage Corp. to Green Point Mortgage Funding Inc., nor pleadings to show acquisition by merger.

4.  On June 19, 2007, NorthFolk Bank or Green Point Mortgage Funding, Inc. sold or assigned all Loan Documents executed in connection with the note and mortgage of October 16, 1998 of Robert and Kimberly Kutina. See attached notice of sale or assignment. Exhibit A.

Thus Plaintiff sold the mortgage (which is not even in their name) to First Mortgage Strategies Group Inc. on June 19, 2007, closing date of transfer. Plaintiff did not amend the pleadings to substitute the new party and Defendant Kimberly A. Valenti had never been served at this point and Robert L. Kutina has never been served. Furthermore, Plaintiff never amended the complaint. Exhibit B.

5.  On August 7, 2007, a Final Judicial report was filed with the Court, and did not reflect the sale or assignment show in Exhibit. C, attached hereto the assignment by Plaintiff to Third Party, thus the Final Judicial Report is not a true and accurate report of the actual facts.

6.  On August 9, 2007 this Court entered its foreclosure decree based upon false and incorrect information and false and incorrect affidavits.

    The Federal district Court Case of the Northern District court of Ohio being Deustch Bank, vs. Carol A Moore (copy attached hereto) dismissed numerous

COPY

foreclosure because the Plaintiff did not have the mortgage in their name.

In this case the actual mortgage is not in the name of the Plaintiff and Plaintiff did not explain in pleadings or otherwise why the Mortgage is in the name of GreenPoint Mortgage Co., and why GreenPoint Funding Inc. brought suit. This is a direct violation of the law of Ohio. The Duestch Bank case says for Plaintiff to recover damages Plaintiff must have the Mortgage recorded in Plaintiff's name. Plaintiff clearly did not have the mortgage in its name and was is not entitled to judgment. Thus Defendant has a valid defense to this suit and Plaintiff had no standing, this order of August 9, 2007 should be vacated.

Secondly, not only did Plaintiff not own the Mortgage, but Plaintiff or NorthFork Bank sold or assigned the Mortgage of GreenPoint Mortgage, Co. to a Third party on June 19, 2007 and never amended or corrected the pleadings.

Thus Plaintiff no longer owned the note or mortgage, but proceeded in bad faith to litigate a fraudulent claim which they did not own. Furthermore, Plaintiff did not disclosure this transaction and its' lack of ownership of the mortgage to the Court by amending the pleadings.

Thus Plaintiff was not entitled to a judgment as they did not own the note or Mortgage and did not amend the pleadings accordingly.

### POINT TWO

A necessary Party was never served.

1.    The record shows that Robert L. Kutina never claimed any regular or certified mail.

COPY

2. Mr. Robert L. Kutina and Kimberly Kutina divorced in 1998. Robert L. Kutina did not live at the residence and the process server knew that, because Kimberly told him.

3. See attached affidavit of Kimberly A. Valenti (f.n.a. Kutina) (Exhibit B)

4. A process server never made personal service on Kimberly A. Valenti as individual or Robert L. Kutina. The process server left the papers somewhere, but not with Kimberly A. Valenti. Furthermore, Robert L. Kutina did not live there. Thus service was never made. (check this wording)

5. The Affidavit of Service of Jason Butler filed July 7, 2007 only says he left the summons with a female resident believed to be co-resident of Robert L. Kutina. This is not true and is not a fact. So service was not made (see attached affidavit). Civil Rule 4, and Due Process of the Ohio and US Constitutions, requires that to proceed to a judgment there must be service and a failure of service, would be a denial of property without due process under the 14th Amendment to the U.S. Constitution.

Thus, the Order of August 9, 2007 should be vacated because it is a denial of due process.

### THIRD POINT

Civil Rule 60(B) allows an Order to be vacated if there is a mistake or excusable neglect or inadvertence. Kimberly a Valenti, Trustee of Kimberly A. Valenti Trust, gave the summons of foreclosure to Attorney Jeff James and she was under the belief he was going to defend this suit.

COPY

Attorney James ~~prepared~~ and had Kimberly A. Valenti sign the affidavit that is Exhibit B.

At or about the time that Kimberly gave the papers to Attorney James, she became ill and went into the hospital. Then she became involved in a domestic situation that occupied her during August, 2007. On September 6, 2007, Kimberly Valenti's 22 year old daughter suddenly and unexpectantly died. This put Kimberly in a state of shock and pre-occupied her for sometime. Then in February, 2008 she learned that a Sheriffs Sale is set. Wherefore this 60(B) motion is being filed.

Due to neglect mistake or inadvertence a misunderstanding occurred and an answer was not filed. Kimberly A. Valenti is being denied due process because she has not had an opportunity to defend this suit.

Thus the 60(B) motion should be granted and an opportunity to sefend this suit should be allowed to Defendant along with the right to bring a counter claim, interplead the 3rd Party for a counter suit.

## FOURTH POINT

The affidavit used to support the Default Judgment, affidavit of Tina Jones, is a false document and is not grounds to support the Default Judgment. Plaintiff says they owned the account on June 19, 2007 in the affidavit. Yet Plaintiff they sold the account on June 19, 2007. They filed the false affidavit with the Court on June 26, 2007. The use of a false affidavit is denial of Due Process.

Thus, the Default Judgment should be vacated.

Furthermore, to grant a Default Judgment, a hearing is to be held to determine damages. Defendant believes no actual hearing was held on this Default Judgment



and thus the default judgment should be vacated.

WHEREFORE, for the reasons heretofore the default judgment granted by order and entry on August 9, 2007 should be vacated and Defendant given an opportunity to respond to, and the sheriff sale set for March 31, 2008 should be vacated as well as any order and, an immediate stay of the Sheriff Sale set for March 28, 2008 should be granted by order of this court.

Respectfully Submitted,

Donald P. Mitchell, Jr. (# 0016178)
3766 Fishcreek Road, #267
Stow, Ohio 44224
330-297-7788
*Attorney for Defendant*

## PROOF OF SERVICE

A copy of the foregoing 60(B) motion was sent this __3__ day of ~~February~~ 2008 to:

1.)     David W. Ciffe at 525 Vine Street, Ste. 800, Cincinnati, Ohio 45202

2.)     Matthew J. Richardson at P.O. Box 165028, Columbus, Ohio 43126-5028.

3.)     Summit County Fiscal Officer at 176 S. Main St., Akron, Ohio 44308.

4.)     Robert L. Kutina

Donald P. Mitchell, Jr. (# 0016178)

COPY

## ▬▬ **North Fork** Bank

June 19, 2007

Kimberly A. Kutina
5977 Ogilby Drive
Hudson, Ohio 44236

**Certified Mail No. 7006 2150 0004 1676 7222**
**Return Receipt Requested**

Re:   Sale and assignment of certain indebtedness currently owed to North Fork Bank or GreenPoint
      Mortgage Funding, Inc.

To Whom It May Concern:

We hereby refer to the following:

Note dated October 16, 1998 in the amount of $119,250 (the "Note").

Either North Fork Bank or GreenPoint Mortgage Funding, Inc. (the "Assignor") is the current owner
and holder of the Note (such Note, together with the documents executed in connection with such
Note, shall be referred to as the "Loan Documents").

This letter shall constitute notice to the borrower of the sale and assignment of all of the Assignor's
right, title and interest in, to and under the Loan Documents to First Mortgage Strategies Group, Inc.
(the "Assignee"). This transaction closed on June 19, 2007 (the "Closing Date").

From and after the Closing Date, the Assignee shall succeed to all of the rights and obligations of the
Assignor under the Loan Documents and the borrower shall treat the Assignee for all purposes as
payee in place of the Assignor under the Loan Documents. After receipt of this letter, the borrower
should make no further payments on the Note to the Assignor, but should make such payments to the
following:

> First Mortgage Strategies Group, Inc.
> P.O. Box 2044
> Department 0500
> Memphis, Tennessee 38101

If you have any questions regarding payments, please feel free to call Robin Terry at (800) 214-3819
or (901) 766-9923, Extension 100.

Very truly yours,

By: _____
Julie Billelo
Assistant Treasurer

265 BROADHOLLOW ROAD, MELVILLE, P.O. BOX 8913 NY 11747, 631 844 1000

COPY

Exhibit B

IN THE COURT OF COMMON PLEASE
SUMMIT COUNTY, OHIO

**GREENPOINT MORTGAGE** )
**FUNDING, INC.** )
)
      **Plaintiff,** )
)
    · vs )
)
**ROBERT L. KUTINA, et al.** )
)
    **Defendant.** )

**CASE NO.: CV-2007-05-3858**

**JUDGE: ELINORE MARSH-STORMER**

**AFFIDAVIT**

Kimberly A. Valenti, the affiant herein, having been first duly cautioned and

sworn, hereby swears and affirms the following to be true and accurate to the best of her

knowledge and belief:

(1)    On the 5th day of June a man appeared at the door of 5977 Ogilby Drive, Hudson, Ohio 44236 and inquired as to Mr.Kutina.

(2)    Same was informed that Mr. Kutina did not reside at said location.

(3)    The door was then immediately closed ending any further conversation.

(4)    Same man yelled, inaudibly through door, and then, at an unknown time, left.

(5)    Mr. Kutina does not reside, and has not for a number of years, at said location.

(6)    Affiant does not believe that a process server perfected service in the instant case, pursuant to the Ohio Rules of Civil Procedure.

(7)    Affiant intends to file responsive pleadings in the above-captioned case.

(8)    Affiant had been ill resulting in a recent hospitalization duration of approximately one (1) week and has been working toward recovery. (see attached).

9

COPY

FURTHER AFFIANT SAYETH NAUGHT.

_____
Kimberly A. Valenti

STATE OF OHIO        )
                     )    ss
COUNTY OF SUMMIT     )

Sworn to and subscribed in my presence this 12th day of August, 2007

_____
Notary Public

KEN RUBENSTEIN, Atty.
NOTARY PUBLIC • STATE OF OHIO
My commission has no expiration date
Section 147.03 O.R.C.

10



COPY
COPY

Exhibit C

DANIEL M. HORRIGAN

2007 AUG -7 PM 3:53

SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS
SUMMIT COUNTY, OHIO

GreenPoint Mortgage Funding, Inc.

    Plaintiff,

    vs.

Robert L. Kutina, et al.

    Defendants.

Case No. CV-2007-05-3858

Judge Elinore Marsh Stormer

NOTICE OF FILING FINAL
JUDICIAL REPORT

    Attached hereto is a Notice of Filing Final Judicial Report regarding the above referenced case.

                        Respectfully submitted,

                        Matthew J. Richardson (0077157)
                        Manley Deas Kochalski LLC
                        P. O. Box 165028
                        Columbus, OH 43216-5028
                        Telephone: 614-222-4921
                        Fax: 614-220-5613
                        Email: mjr2@mdk-llc.com
                        Attorney for Plaintiff

O:\Cases - TMW07-16751\default judgment-070731-AVU.wpd

E53

COPY
COPY



## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Notice of Filing Final Judicial Report was sent to the following by ordinary U.S. Mail, postage prepaid, this ___ day of July, 2007:

Robert L. Kutina
5977 Ogilby Drive
Hudson, OH 44236

Kimberly A. Kutina
5977 Ogilby Drive
Hudson, OH 44236

The Kimberly A. Valenti Trust, Kimberly A.
Valenti, Trustor and Trustee
5977 Ogilby Drive
Hudson, OH 44236

Summit County Fiscal Officer
175 South Main Street
Akron, OH 44308

David W. Cliffe
Attorney for Huntington National Bank
525 Vine Street
Suite 800
Cincinnati, OH 45202

Matthew J. Richardson

O:\Cases - TM\07-1675\default Judgment-070731-AVU.wpd

COPY
COPY

# FINAL JUDICIAL REPORT

## Issued by Commonwealth Land Title Insurance Company

 **LandAmerica Commonwealth**

Commonwealth Land Title Insurance Company is a member of the
LandAmerica family of title insurance underwriters

**NUMBER**

001-Z010028

**FILE NUMBER: 07-11389**

### FINAL JUDICIAL REPORT

Prepared for:  Manley Deas Kochalski LLC
Attorneys at Law
P. O. Box 165028
Columbus, OH  43216-5028

In the Case of GREENPOINT MORTGAGE FUNDING, INC. v. ROBERT L. KUTINA, et al.,
now pending in the County Court of Common Pleas, Summit County, Ohio, as Case No.
CV-2007-05-3858, THE COMMONWEALTH LAND TITLE INSURANCE COMPANY after a
search of the records of said Summit County, pertaining to the premises involved in said action
since May 7, 2007, to the date July 11, 2007, hereby guarantees that there appear of record,
during said period, no instruments of proceedings relating to or affecting said premises except as
shown below.

(Continued)

G:\Cases - TM\07-11389\FJR-070716-TSG.wpd



Final Judicial Report (Continued)

1.   **TAX INFORMATION**: The property stands charged on the Summit County Auditor's Duplicate in the name of Kimberly A. Valenti, Trustee. It carries parcel number 3000476 and has a physical street address of 5977 Ogilby Drive, Hudson, OH 44236.

The Treasurer has a first lien for taxes in an amount to be determined.

Taxes or assessments approved, levied or enacted by the State, County, Municipality, Township or similar taxing authority, but not yet certified to the tax duplicate of the County in which the land is situated, including any retroactive increases in taxes or assessments resulting from any retroactive increase in the valuation of the land by the State County, Municipality, Township or other taxing authority.

2.   The foreclosure action styled GreenPoint Mortgage Funding, Inc. v. Robert L. Kutina, et al., of record in the Summit County Court of Common Pleas, as Case No. CV-2007-05-3858, reflects that all parties necessary for the adjudication of this dispute are before the Court.

G:\Cases - TM\07-11389\FJR-070716-TSG.wpd


COPY
COPY

COMMONWEALTH LAND TITLE INSURANCE COMPANY

Number **901-Z010026**

File Number 07-11389

### FINAL JUDICIAL REPORT

This is a guarantee of record title only and is made for the use and benefit of all parties to said proceedings, and the purchaser at judicial sale thereunder. Liability hereunder and under any Preliminary Judicial Report issued on the property described in said proceedings shall not exceed, in the aggregate, the sum of $108,811.53.

Dated: July 11, 2007 at 7:59 a.m.

In witness whereof, *COMMONWEALTH LAND TITLE INSURANCE COMPANY has caused its corporate name and seal to be hereunto affixed.*

*Commonwealth Land title Insurance Company*

BY: _____
*Nicole P. Bontrager, Agent, Authorized Signatory*

G:\Cases - TM\07-11389\FJR-070716-TSO.wpd

COPY

Cat12, Perelman, Termed

## U.S. District Court
## Northern District of Ohio (Cleveland)
## CIVIL DOCKET FOR CASE #: 1:07-cv-02282-CAB

Deutsche Bank National Trust Company v. Moore
Assigned to: Judge Christopher A. Boyko
Demand: $77,000
Cause: 28:1345 Foreclosure

Date Filed: 07/27/2007
Date Terminated: 10/31/2007
Jury Demand: None
Nature of Suit: 220 Real Property:
Foreclosure
Jurisdiction: Diversity

**Plaintiff**

**Deutsche Bank National Trust Company**
*as Trustee of*
*other*
Argent Mortgage Securities, Inc. Asset
Backed Pass-Through Certificates,
Series 2006-W4 Under the Pooling and
Servicing Agreement Dated as of April
1, 2006
*other*
Assignee of Argent Mortgage
Company, LLC

represented by **Benjamin N. Hoen**
Weltman, Weinberg & Reis - Cleveland

200 Lakeside Place
323 Lakeside Avenue, W
Cleveland, OH 44113
216-685-1164
Fax: 216-363-4034
Email: bhoen@weltman.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

Carol A. Moore

**Defendant**

**State of Ohio Department of Taxation**

represented by **Joseph T. Chapman**
Office of the Attorney General -
Collections Enforcement
21st Floor
150 East Gay Street
Columbus, OH 43215
614-466-6594
Fax: 614-752-9070
Email: jchapman@ag.state.oh.us
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| | | |

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE FORECLOSURE CASES | ) | CASE NO. NO.1:07CV2282 |
| | ) | 07CV2532 |
| | ) | 07CV2560 |
| | ) | 07CV2602 |
| | ) | 07CV2631 |
| | ) | 07CV2638 |
| | ) | 07CV2681 |
| | ) | 07CV2695 |
| | ) | 07CV2920 |
| | ) | 07CV2930 |
| | ) | 07CV2949 |
| | ) | 07CV2950 |
| | ) | 07CV3000 |
| | ) | 07CV3029 |
| | ) | |
| | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |

CHRISTOPHER A. BOYKO, J.:

On October 10, 2007, this Court issued an Order requiring Plaintiff-Lenders in a number of pending foreclosure cases to file a copy of the executed Assignment demonstrating Plaintiff was the holder and owner of the Note and Mortgage *as of the date the Complaint was filed*, or the Court would enter a dismissal. After considering the submissions, along with all the documents filed of record, the Court dismisses the captioned cases without prejudice. The Court has reached today's determination after a thorough review of all the relevant law and the briefs and arguments recently presented by the parties, including oral

proper party to sue is difficult or when an understandable mistake has been made. ... It is, in cases of this sort, intended to insure against forfeiture and injustice ..." Plaintiff-Lenders do not allege mistake or that a party cannot be identified. Nor will Plaintiff-Lenders suffer forfeiture or injustice by the dismissal of these defective complaints otherwise than on the merits.

Moreover, this Court is obligated to carefully scrutinize all filings and pleadings in foreclosure actions, since the unique nature of real property requires contracts and transactions concerning real property to be in writing. R.C. § 1335.04. Ohio law holds that when a mortgage is assigned, moreover, the assignment is subject to the recording requirements of R.C. § 5301.25. *Creager v. Anderson* (1934), 16 Ohio Law Abs. 400 (interpreting the former statute, G.C. § 8543). "Thus, with regards to real property, before an entity assigned an interest in that property would be entitled to receive a distribution from the sale of the property, their interest therein must have been recorded in accordance with Ohio law." *In re Ochmanek*, 266 B.R. 114, 120 (Bkrtcy.N.D. Ohio 2000) (citing *Putney v. Merchants' National Bank of Defiance*, 71 Ohio St. 173, 177 (1904).[1]

This Court acknowledges the right of banks, holding valid mortgages, to receive timely payments. And, if they do not receive timely payments, banks have the right to properly file actions on the defaulted notes — seeking foreclosure on the property securing the notes. Yet, this Court possesses the independent obligations to preserve the judicial integrity of the federal court and to jealously guard federal jurisdiction. Neither the fluidity of

---

[1] Astoundingly, counsel at oral argument stated that his client, the purchaser from the original mortgagee, acquired complete legal and equitable interest in land when money changed hands, even before the purchase agreement, let alone a proper assignment, made its way into his client's possession.

-4-

the secondary mortgage market, nor monetary or economic considerations of the parties, nor the convenience of the litigants supersede those obligations.

Despite Plaintiffs' counsel's belief that "there appears to be some level of disagreement and/or misunderstanding amongst professionals, borrowers, attorneys and members of the judiciary," the Court does not require instruction and is not operating under any misapprehension. The "real party in interest" rule, to which the Plaintiff-Lenders continually refer in their responses or motions, is clearly comprehended by the Court and is not intended to assist banks in avoiding traditional federal diversity requirements.[2] Unlike Ohio State law and procedure, as Plaintiffs perceive it, the federal judicial system need not, and will not, be "forgiving in this regard."[3]

---

[2]

Plaintiff's reliance on Ohio's "real party in interest rule" (ORCP 17) and on any Ohio case citations is misplaced. Although Ohio law guides federal courts on substantive issues, state procedural law cannot be used to explain, modify or contradict a federal rule of procedure, which purpose is clearly spelled out in the Commentary. "In federal diversity actions, state law governs substantive issues and federal law governs procedural issues." *Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938), *Legg v. Chopra* 286 F. 3d 286, 289 (6th Cir. 2002); *Gafford v. General Electric Company*, 997 F. 2d 150, 165-6 (6th Cir. 1993).

[3]

Plaintiff's, "Judge, you just don't understand how things work," argument reveals a condescending mindset and quasi-monopolistic system where financial institutions have traditionally controlled, and still control, the foreclosure process. Typically, the homeowner who finds himself/herself in financial straits, fails to make the required mortgage payments and faces a foreclosure suit, is not interested in contesting state or federal jurisdictional requirements, either *pro se* or through counsel. Their focus is either, "how do I save my home," or "if I have to give it up, I'll simply leave and find somewhere else to live."

In the meantime, the financial institutions or successors/assignees rush to foreclose, obtain a default judgment and then sit on the deed, avoiding responsibility for maintaining the property while reaping the financial benefits of interest running on a judgment. The financial institutions know the law charges the one with title (still the homeowner) with maintaining the property.

There is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There is nothing improper or wrong with financial institutions or law firms making a profit — to the contrary, they should be rewarded for sound business and legal practices. However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing

-5-

arguments heard on Plaintiff Deutsche Bank's Motion for Reconsideration. The decision, therefore, is applicable from this date forward, and shall not have retroactive effect.

## LAW AND ANALYSIS

A party seeking to bring a case into federal court on grounds of diversity carries the burden of establishing diversity jurisdiction. *Coyne v. American Tobacco Company*, 183 F. 3d 488 (6th Cir. 1999). Further, the plaintiff "bears the burden of demonstrating standing and must plead its components with specificity." *Coyne*, 183 F. 3d at 494; *Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464 (1982). The minimum constitutional requirements for standing are: proof of injury in fact, causation, and redressability. *Valley Forge*, 454 U.S. at 472. In addition, "the plaintiff must be a proper proponent, and the action a proper vehicle, to vindicate the rights asserted." *Coyne*, 183 F. 3d at 494 (quoting *Pestrak v. Ohio Elections Comm'n*, 926 F. 2d 573, 576 (6th Cir. 1991)). To satisfy the requirements of Article III of the United States Constitution, the plaintiff must show he has *personally suffered some actual injury* as a result of the illegal conduct of the defendant. (Emphasis added). *Coyne*, 183 F. 3d at 494; *Valley Forge*, 454 U.S. at 472.

In each of the above-captioned Complaints, the named Plaintiff alleges it is the holder and owner of the Note and Mortgage. However, the attached Note and Mortgage identify the mortgagee and promisee as the original lending institution — one other than the named Plaintiff. Further, the Preliminary Judicial Report attached as an exhibit to the Complaint makes no reference to the named Plaintiff in the recorded chain of title/interest. The Court's Amended General Order No. 2006-16 requires Plaintiff to submit an affidavit along with the Complaint, which identifies Plaintiff either as the original mortgage holder, or as an assignee,

-2-

trustee or successor-in-interest. Once again, the affidavits submitted in all these cases recite the averment that Plaintiff is the owner of the Note and Mortgage, without any mention of an assignment or trust or successor interest. Consequently, the very filings and submissions of the Plaintiff create a conflict. In every instance, then, Plaintiff has not satisfied its burden of demonstrating standing at the time of the filing of the Complaint.

Understandably, the Court requested clarification by requiring each Plaintiff to submit a copy of the Assignment of the Note and Mortgage, executed as of the date of the Foreclosure Complaint. In the above-captioned cases, *none* of the Assignments show the named Plaintiff to be the owner of the rights, title and interest under the Mortgage at issue as of the date of the Foreclosure Complaint. The Assignments, in every instance, express a present intent to convey all rights, title and interest in the Mortgage and the accompanying Note to the Plaintiff named in the caption of the Foreclosure Complaint upon receipt of sufficient consideration on the date the Assignment was signed and notarized. Further, the Assignment documents are all prepared by counsel for the named Plaintiffs. These proffered documents belie Plaintiffs' assertion they own the Note and Mortgage by means of a purchase which pre-dated the Complaint by days, months or years.

Plaintiff-Lenders shall take note, furthermore, that prior to the issuance of its October 10, 2007 Order, the Court considered the principles of "real party in interest," and examined Fed. R. Civ. P. 17 — "Parties Plaintiff and Defendant; Capacity" and its associated Commentary. The Rule is not *apropos* to the situation raised by these Foreclosure Complaints. The Rule's Commentary offers this explanation: "The provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the

-3-

## CONCLUSION

For all the foregoing reasons, the above-captioned Foreclosure Complaints are dismissed without prejudice.

**IT IS SO ORDERED.**

**DATE: October 31, 2007**

S/Christopher A. Boyko
**CHRISTOPHER A. BOYKO**
**United States District Judge**

and jurisdictional borders. The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance. Finally put to the test, their weak legal arguments compel the Court to stop them at the gate.

The Court will illustrate in simple terms its decision: "Fluidity of the market" — "X" dollars, "contractual arrangements between institutions and counsel" — "X" dollars, "purchasing mortgages in bulk and securitizing" — "X" dollars, "rush to file, slow to record after judgment" — "X" dollars, "the jurisdictional integrity of United States District Court" — "Priceless."

-6-

DANIEL M. HORRIGAN
IN THE COURT OF COMMON PLEAS
2008 MAR 17 AM 10:49 MIT COUNTY, OHIO

SUMMIT COUNTY
CLERK OF COURTS

GreenPoint Mortgage Funding, Inc.

Plaintiff,

vs.

Robert L. Kutina, et al.,

Defendants.

Case No. CV-2007-05-3858

Judge Elinore M. Stormer

**FORECLOSURE**

### MEMORANDUM CONTRA OF PLAINTIFF GREENPOINT MORTGAGE FUNDING, INC. TO DEFENDANT KIMBERLY A. VALENTI, TRUSTEE OF THE KIMBERLY A. VALENTI TRUST'S 60(B) MOTION TO VACATE JUDGMENT ENTRY ORDER

Now comes GreenPoint Mortgage Funding, Inc. ("Plaintiff") and hereby files its

Memorandum Contra to a motion under Ohio Civ.R. 60(B) to vacate judgment ("Rule 60(B)

motion"), filed by Defendant Kimberly A. Valenti, Trustee of the Kimberly A. Valenti Trust

("Defendant Valenti"). Defendant Valenti's Rule 60(B) motion should be denied for the

following reasons: (1) Defendant Valenti was properly served, failed to answer the complaint,

and has no meritorious defense to this foreclosure proceeding; and (2) Defendant Valenti has no

standing to contest the adequacy of service on Defendant Robert L. Kutina ("Defendant Kutina")

as a basis for vacating judgment against herself.

#### Facts

Plaintiff filed this foreclosure action May 30, 2007 against Defendant Valenti (fka

Kutina), individually and in her capacity as trustee of the Kimberly A. Valenti trust, and

Defendant Kutina, among other interested Defendants. Plaintiff, GreenPoint Mortgage Funding,

G:\Cases - TMN07-16751\Memo Contra 60(b)-080312-KNM.wpd

COPY

Inc., is a successor by merger to GreenPoint Mortgage Corp., the mortgagee of record when Plaintiff filed its Complaint. See Preliminary Judicial Report, attached to Plaintiff's Complaint; Notice of Filing Assignment of Mortgage, filed September 4, 2007. This foreclosure action is the second foreclosure action filed against Defendant Valenti and Defendant Kutina in the past three years. Defendant Huntington National Bank, which owns a second mortgage on the property that is the subject of this foreclosure proceeding, filed a foreclosure action against Defendant Valenti and Defendant Kutina on August 8, 2005, which subsequently settled and was dismissed. See Huntington Complaint, attached hereto as Exhibit A. Now, Defendant Valenti and Defendant Kutina are once again in foreclosure, are fifteen months behind on their mortgage, and are currently due for their December 1, 2006 payment.

As the docket reflects, Plaintiff perfected service on Defendant Valenti at her resident address, as listed on the Complaint, on June 5, 2007. See Affidavit of Jason Butler, attached hereto as Exhibit B. On the same day, Plaintiff perfected service on Defendant Kutina at his resident address, as listed on the Complaint. See Affidavit of Jason Butler, attached hereto as Exhibit C. The addresses listed on the Complaint for both Defendant Valenti and Defendant Kutina are the same and identify the property that is the subject of this foreclosure proceeding. The address listed on the Complaint for Defendant Kutina reflects the most recent skip-trace data and the reasonable expectation that valid service could be perfected upon Defendant Kutina at the address listed on the Complaint. See Affidavit of Thayer Horton, attached hereto as Exhibit D. Plaintiff perfected service on Defendant Valenti in her capacity as trustee on July 5, 2007 via ordinary mail.

Defendant Valenti and Defendant Kutina each failed to answer Plaintiff's Complaint. Consequently, Plaintiff moved for default judgment against both Defendant Valenti and

O:\Cases - TM\07-16751\Memo Contra 60(b)-080312-KNM.wpd      2

COPY

Defendant Kutina. In support of Plaintiff's Motion for Default Judgment, Plaintiff executed a judgment affidavit on June 19, 2007, averring that "Plaintiff is the owner and holder of the promissory note and mortgage referenced in the Complaint," and filed this Affidavit in this Court June 26, 2007. See Affidavit of Tina Jones, filed August June 26, 2007. The same day, unbeknownst to Tina Jones, Plaintiff's Affiant in support of Plaintiff's Motion for Default Judgment, Plaintiff assigned its interest in the note and mortgage referenced in the Complaint to First Mortgage Strategies Group, Inc.. See Notice of Filing Assignment of Mortgage, filed September 4, 2007. Subsequently, Plaintiff recorded the mortgage assignment on August 23, 2007 and filed notice of the assignment in this Court on September 4, 2007.

Defendant Valenti is an attorney licensed by the state of Ohio (Ohio Bar #0074624) in her second foreclosure action as a borrower. In the instant case, when default judgment was granted in favor of Plaintiff on August 9, 2007, Defendant Valenti had not answered the Complaint, had not sought leave to file an answer to the Complaint, and had not opposed Plaintiff's Motion for Default Judgment against her. Further, despite having been informed of the mortgage assignment in early September 2007, Defendant Valenti did not object until March 3, 2008 -- more than six months later and on the brink of sale scheduled for March 28, 2008 -- that Plaintiff was not the real party in interest or that Plaintiff's assignee should have been substituted for Plaintiff. In the more than six months since Defendant Valenti was apprised of the mortgage assignment, Plaintiff suffered the loss of thousands of dollars in interest on Defendant Valenti's defaulted note and mortgage, and spent out-of-pocket sums to advertise Defendant Valenti's property for sheriff's sale.

On March 3, 2008, less than a month before sheriff's sale and seven months after judgment was taken against her, Defendant Valenti moved this Court to vacate judgment against

G:\Cases - TM\07-16751\Memo Contra 60(b)-080312-KNM.wpd     3



her under Ohio Civ.R. 60(B) and to stay sheriff's sale. See Def. 60(B) Mot. Defendant Valenti

enumerated four grounds on which she claimed entitlement to relief. First, Defendant Valenti

claimed that Plaintiff did not have standing "and failed to have a claims [sic] for which relief can

be granted." Id., at Answer [sic], ¶ 1. Second, Defendant Valenti claimed that a third party,

Defendant Kutina -- and not herself -- was not served with process. Id., at ¶ 2. Third, Defendant

Valenti claimed inadvertence and excusable neglect under Ohio Civ. R. 60(B)(1) on alleged

grounds that Defendant Valenti's attorney failed to answer and defend the foreclosure action. Id.,

at ¶ 3. Finally, Defendant Valenti claimed that Plaintiff's judgment affidavit, "is a false and

fraudulent misrepresentation because Plaintiff did not own the mortgage or note at the time Id., at

¶ 4.

**Law and Argument**

Defendant Valenti has not met her burden under Ohio Civil Rule 60(B), and her Rule

60(B) motion should be denied. Defendant Valenti has not asserted a meritorious defense to this

foreclosure proceeding, is not entitled to relief under any of the specific grounds under Ohio

Civil Rule 60(B), and has no standing to seek relief from judgment on grounds that another party

was allegedly not served.

Ohio Civil Rule 60(B) provides for relief based upon the following:

> (1) mistake, inadvertence, surprise or excusable neglect; (2) newly discovered
> evidence which by due diligence could not have been discovered in time to move
> for a new trial under Rule 59(B); (3) fraud (whether heretofore denominated
> intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party;
> (4) the judgment has been satisfied, released or discharged, or a prior judgment
> upon which it is based has been reversed or otherwise vacated, or it is no longer
> equitable that the judgment should have prospective application; or (5) any other
> reason justifying relief from the judgment.

Further, to warrant relief under Ohio Civil Rule 60(B), Defendants must demonstrate

all of the following:

> (1) the party has a meritorious defense or claim to present if relief is granted; (2) the party is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5); and (3) the motion is made within a reasonable time, and, where the grounds for relief are Civ.R.60(B)(1), (2) or (3), not more than one year after the judgment, order or proceeding was entered or taken." GTE Automatic Elec., Inc. v. ARC Indus Inc., 47 Ohio St.2d, at paragraph two of the syllabus. These requirements must be shown by "operative facts "which demonstrate the movant's entitlement to relief. Rose Chevrolet, Inc. v. Adams (1988), 36 Ohio St.3d 17, 21, 520 N.E.2d 564. Civ.R. 60(B) will be denied if the movant fails to adequately demonstrate any one of the GTE requirements. Argo Plastic Products, v. Cleveland (1984), 15 Ohio St.3d 389, 391.

Wolfe v. Perry (June 30, 2004), Ottawa OT-03-026, 2004 WL 1465737, 2004-Ohio-3443.

Defendant Valenti has failed to satisfy the first GTE requirement by having failed to produce operative facts to demonstrate that she has a meritorious defense to present if the judgment is vacated. Indeed, Defendant Valenti does not present any evidence, or even aver, that she was not in default under the terms of the note and mortgage.

Defendant Valenti was required to make regular monthly payments to the Plaintiff of principal and interest. Defendant Valenti failed to make the required payments, thereby defaulting under the terms of the note. Therefore, Plaintiff is entitled to foreclose on its mortgage, to have the subject property sold, and to apply the proceeds to the amounts owing to the Plaintiff on the promissory note and mortgage. Nothing in Defendant Valenti's Rule 60(B) motion contradicts these conclusions of law. Otherwise, Defendant Valenti raises extraneous issues that do not qualify as meritorious defenses sufficient to obtain relief from judgment under Rule 60(B).

**I.      Defendant Valenti does not have a meritorious defense to this foreclosure proceeding on grounds that Plaintiff lacked standing to take judgment against her because Plaintiff violated no applicable Ohio law.**

Defendant Valenti claims that she has a meritorious defense to this foreclosure action on grounds that Plaintiff "did not have standing to take judgment, and fails to state a claim for which

COPY

relief can be granted." Def. 60(B) Mot., at Point One, ¶ 1. For legal authority, Defendant Valenti relies entirely on a federal court case that does not apply Ohio state law and does not apply in Ohio state courts. Id. (citing Deutsche Bank v. Carole A. Moore, Case No. 1:07 CV 02202CAB, Northern District of Ohio Federal Court, attached to Defendant Valenti's Rule 60(B) Motion). As this Court knows well, federal courts are courts of limited jurisdiction that have heightened jurisdictional and standing requirements that do not exist in Ohio courtrooms. Instead, Ohio courts are courts of general jurisdiction in which jurisdiction in foreclosure proceedings is determined by the situs of the real property. The federal decision on which Defendant Valenti relies does not apply in Ohio state court.

More specifically, Defendant Valenti claims that "the actual mortgage is not in the name of the Plaintiff" and further that "Plaintiff did not explain in pleadings or otherwise why the Mortgage is in the name of GreenPoint Mortgage Co., and why GreenPoint Funding, Inc. brought suit." Id., at Point One, ¶ 6. This, Defendant Valenti claims, "is a direct violation of the law of Ohio." Id. However, again, Defendant Valenti fails to provide any Ohio authority in support of this conclusion. Further, Defendant Valenti is incorrect that Plaintiff did not explain the relationship between GreenPoint Mortgage Co. and GreenPoint Funding, Inc. The mortgage assignment Plaintiff filed in this case clearly avers that Greenpoint Mortgage Funding, Inc, is a successor-by-merger to GreenPoint Mortgage Corp. See Notice of Filing of Assignment of Mortgage, filed September 4, 2007.

In any event, Defendant Valenti did not raise any objection under Ohio Civ.R. 17(A) until nine months after she was served with the summons and Complaint and more than six months after judgment was taken against her. Additionally, if Defendant Valenti had any objections to raise under Rule 17(A) that were not answered by the mortgage assignment Plaintiff filed, she

G:\Cases - TM\07-16751\Memo Contra 60(b)-080312-KNM.wpd    6

COPY

did not raise these until six months after she was served with a copy of the mortgage assignment.

Failure to timely raise a Rule 17(A) objection operates as a waiver of the objection. See, e.g.,

MacLellan v. Motorists Ins. Co. (Cuyahoga Cty. November 18, 1993), No. 64090, 1993 WL

483599, at *3 ("[W]e hold that failure to name, as a party plaintiff to an action, the real party in

interest, is not a defect of jurisdiction, but instead an objection or defense to a claim, which must

be timely raised by the defendant or waived.") Because Defendant failed to timely raise any real

party in interest objection until nine months had passed, and after judgment was taken against

her, Defendant Valenti has waived her right to make an objection under Rule 17(A).

Furthermore, under Rule 25, governing "Substitution of Parties," when Plaintiff assigned

its interest in the note and mortgage after this action was commenced, substitution was not

required. Rule 25(C) provides, in pertinent part, that

> In case of any transfer of interest, the action may be continued by . . . the original
> party, unless the court upon motion directs the person to whom the interest is
> transferred to be substituted in the action or joined with the original party.

No party, including Defendant Valenti, moved, nor did this Court direct, that Plaintiff's assignee,

First Mortgage Strategies Group, Inc., be substituted for Plaintiff. The plain language of Rule

25(C) states that the original party may continue the action in its own name, notwithstanding the

transfer of interest. As a result, Plaintiff did have standing to take judgment against Defendant

Valenti, contrary to Defendant Valenti's claims. Defendant Valenti's claim that Plaintiff

"proceeded in bad faith to litigate a fraudulent claim which they [sic] did not own" is thus

meritless.

Furthermore, contrary to Defendant Valenti's claims, Plaintiff's Final Judicial Report

("FJR"), filed August 7, 2007, did not reflect the sale or assignment for a valid and obvious

reason: Plaintiff had not assigned the note and mortgage as of the date the FJR was prepared,

COPY

June 11, 2007. Instead, Plaintiff assigned the note and mortgage on June 19, 2007, as the
mortgage assignment indicates. As a result, Plaintiff's assignee had no reason to appear on the
FJR, and Defendant Valenti's claims of fraud again ring hollow.

Finally, Defendant Valenti cannot claim that she was prejudiced by any of these issues.
Defendant Valenti might have a meritorious defense to this foreclosure action if she could allege
that she went into default because she did not know to whom to make her payments. But she has
not made this claim, nor is there any basis for it, and Plaintiff has not violated any rules to which
Defendant Valenti timely objected.

For these reasons, Defendant Valenti does not have a meritorious defense on grounds that
Plaintiff lacked standing to pursue foreclosure proceedings against her, necessary to obtain relief
under Rule 60(B).

**II.      Defendant Valenti does not have a meritorious defense to this foreclosure
proceeding on grounds of failure of service because Defendant lacks standing to
assert the rights of third parties and has no basis to claim that she was not served
herself.**

Remarkably, Defendant Valenti claims that she has a meritorious defense to this
foreclosure proceeding not on grounds that Plaintiff failed to serve her, but rather on grounds
Plaintiff failed to serve Defendant Kutina. See Def. 60(B) Mot., at Point Two. Defendant
Valenti has no standing to assert the due process rights of a different defendant as basis for
vacating judgment against her, and relies on no authority for this extraordinarily self-serving
argument. If Defendant Kutina wishes to file a motion under Rule 60(B), he is free to do so,
despite the fact that Defendat Kutina was served at his last known address, after reasonable skip-
trace investigation, and that Plaintiff's process server testified that Defendant Kutina was served
at that address. See Affidavit of Thayer Horton, at ¶¶ 2–4, attached hereto as Exhibit D;
Affidavit of Jason Butler, attached hereto as Exhibit C. As a result, Defendant Valenti cannot

claim that she, and not Defendant Kutina, has a meritorious defense to this foreclosure proceeding for lack of proper service.

In any event, due process merely requires that, to be valid, service of process be accomplished in a manner "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action" and to give them an opportunity to appear. Samson Sales, Inc. v. Honeywell, Inc. (1981), 66 Ohio St.2d 290, 293 (citing Mullane v. Cent. Hanover Bank & Trust Co. (1950), 339 U.S. 306, 314). Additionally, service of process must satisfy the requirements of Ohio Civ.R. 4. Even if Defendant Valenti could see judgment against her vacated on grounds of improper service on a different defendant, which she cannot, Defendant Valenti cannot produce operative facts even to show that Defendant Kutina was not properly served. Defendant Kutina was served at the address for the property that is the subject of this foreclosure proceeding, the address listed on the Complaint, and his last known and best address. See Affidavit of Thayer Horton, attached hereto as Exhibit D.

To the extent that Defendant Valenti claims that she, and not Defendant Kutina, was not served properly, Defendant Kutina's arguments are also unavailing, but for different reasons. First, Defendant Valenti equivocates as to whether Plaintiff failed properly to serve her individually or as trustee for the Kimberly A. Valenti Trust. Defendant Valenti has brought her Rule 60(B) motion in her capacity as trustee for the Kimberly A. Valenti Trust, not in her individual capacity. See Def. Rule 60(B) Mot, at Answer ("Now comes the defendant, Kimberly A. Valenti, Trustee of the Kimberly A. Valenti Trust, and through her attorney Donald P. Mitchell, Jr., moves the Court to vacate. . . ."). However, Defendant Valenti was served in her capacity as trustee on July 5, 2007, as this Court's docket reflects. Elsewhere in her Rule 60(B) motion, Defendant Valenti claims that she was not served "as individual." See id., at Point Two,

COPY

¶ 4 ("A process server never made personal service on Kimberly A. Valenti as individual. . . .").

Plaintiff does not contest Defendant Valenti's standing to claim that she was not served as individual or as trustee of her self-named trust. However, Plaintiff does claim that any claim Defendant Valenti has made that she was not properly served, in whatever capacity, is incorrect and not a meritorious defense to this foreclosure proceeding. After Defendant Valenti refused to accept certified mail service, as this Court's docket reflects, Plaintiff's process server was authorized by the Summit County Clerk of Court to serve Defendant Valenti either in person under Rule 4.1(B) or at her residence at under Rule 4.1(C). As the affidavit of Plaintiff's process server, Jason Butler, testifies, Plaintiff's process server delivered copies of the Summons and Complaint to a female resident believed to be Kimberly A. Kutina, personally, at her residential address as given on the summons, 5977 Ogilby Dr., Hudson, OH 44236.

Indeed, Defendant Valenti, who is a licensed Ohio attorney, admits all of this in her Affidavit in support of her Rule 60(B) Motion, but nevertheless claims that "Affiant does not believe that a process server perfected service in the instant case, pursuant to the Ohio Rules of Civil Procedure." Affidavit of Defendant Valenti, at ¶ 6. Even if Defendant Valenti appears to claim that she was not personally served under Rule 4.1(B), because she may have "shut the door" before Plaintiff's process server handed her the Summons and Complaint, see id., at ¶ 3, Defendant Valenti was nevertheless duly served under Rule 4.1(C) ("Residence Service") and cannot claim otherwise. See Ohio Civ.R. 4.1(C) ("Residence service shall be effected by leaving a copy of the process and the complaint . . . at the usual place of residence of the person to be served with some person of suitable age and discretion then residing therein.").

As a result, Defendant Valenti has no meritorious defense to this foreclosure action on grounds that she or Defendant Kutina was not served with a copy of the summons and complaint.

### III. Defendant Valenti does not have a meritorious defense to this foreclosure proceeding on grounds that Plaintiff's judgment affidavit was false because Defendant Valenti can produce no operative facts to show that Plaintiff's judgment affidavit was false.

As an alleged meritorious defense to Plaintiff's Complaint, Defendant Valenti makes a brief and facile claim that Plaintiff's judgment affidavit is "a false document and is not grounds to support the Default Judgment." Def. 60(B) Mot., at Fourth Point. The alleged basis for this claim is that the Plaintiff's judgment affidavit was executed the same day that Plaintiff assigned the note and mortgage to First Mortgage Strategies, Inc.

Again, however, Defendant Valenti does not establish how Plaintiff's judgment affidavit is false because she produces no operative facts, other than these, to indicate how the judgment affidavit is false. Plaintiff's Affiant in its judgment affidavit, Tina Jones, was unaware that Plaintiff, her employer, had transferred Defendant Valenti's note and mortgage the same day. However, Defendant Valenti can produce no operative facts indicating that Plaintiff executed its judgment affidavit after it transferred the note and mortgage to First Mortgage Strategies, Inc.

Finally, Defendant Valenti produces no operative facts indicating that she was in any way prejudiced by the allegedly false judgment affidavit. Defendant Valenti does not challenge the vast majority of its factual allegations, which are indisputably true, among them that Defendant Valenti is in default under the note and mortgage. Defendant Valenti does not establish how permitting her to file an answer at this late date, on the brink of sheriff's sale, will do anything but unfairly prejudice Plaintiff's assignee. As a result, Defendant Valenti has not produced operative facts to support a meritorious defense to this foreclosure action, necessary to be entitled to relief under Rule 60(B).

COPY

**IV.  Defendant Valenti does not satisfy any of the grounds under Rule 60(B)(1)-(5) necessary to obtain relief from judgment because, as an attorney who became a defendant in a foreclosure proceeding for a second time, Defendant Valenti should have taken the necessary steps to defend this foreclosure proceeding.**

Assuming, arguendo, that Defendant Valenti has presented a meritorious defense to the foreclosure action, she fails to satisfy the second requirement under the GTE standard. The second requirement is that Defendant Valenti must demonstrate that she is entitled to relief under one of the grounds stated in Civ.R. 60(B)(1) through (5). GTE Automatic Electric, Inc., 47 Ohio St. 2d at 150-51. Defendant Valenti has moved for relief from judgment on the grounds of "mistake, inadvertence and/or excusable neglect." Def. Rule 60(B) Mot., at Third Point.

Defendant Valenti claims that she "gave the summons of foreclosure to Attorney Jeff James and she was under the belief that he was going to defend the suit," although Defendant Valenti does not provide the dates for when this event allegedly took place. Id. In any event, as a licensed attorney in her second foreclosure proceeding as a defendant-borrower, Defendant Valenti was well aware of what needed to occur for her to defend the foreclosure proceeding, either pro se or through counsel.

Instead, between June 5, 2007 and March 3, 2008 -- almost nine months -- Defendant Valenti did not receive a copy of any Notice of Appearance or Answer to Plaintiff's Complaint her attorney should have filed, but did receive several court filings from Plaintiff and others that should have alerted her to the fact that her attorney was not being served with them and thus was not defending her foreclosure action, including Defendant Huntington Bank's Answer to the Complaint (filed July 10, 2007), Plaintiff's Motion for Default Judgment (filed August 7, 2007), Plaintiff's Notice of Filing Final Judicial Report (filed August 7, 2007), this Court's Judgment Entry and Decree in Foreclosure (filed August 9, 2007), Plaintiff's Praecipe for Order of Sale (filed August 27, 2007), this Court's Order of Sale issued to the Summit County Sheriff (filed

COPY

August 29, 2007), and Plaintiff's Notice of Filing Assignment of Mortgage (filed September 4, 2007), among others.

All of these documents were served on Defendant Valenti, who never took any action until the brink of sheriff's sale. While Defendant Valenti claims health and family issues as bases for Rule 60(B)(1) excusable neglect, mistake, or inadvertence, none of these allegations explain how Defendant Valenti never "got the message" until the brink of sheriff's sale that her attorney was not defending her foreclosure proceeding.

Additionally, Defendant Valenti was in contact with Plaintiff's assignee, First Mortgage Strategies Group, through her prior counsel, Jeff James, to attempt a loan modification. See Ingrid Bolding August 20, 2007 Letter to Jeff James, attached hereto as Exhibit E. Evidently, Defendant Valenti determined that she could reinstate her loan to see the case dismissed without having her attorney defend the foreclosure action.

As a result, it defies common sense that Defendant Valenti, a licensed Ohio attorney in her second foreclosure action as a defendant-borrower, made a "mistake," was "inadvertent" or "excusably neglected" this foreclosure action over a span of nine months. For these reasons, Defendant Valenti does not satisfy the second GTE requirement to allege operative facts supporting a ground for relief from judgment under Rule 60(B)(1) through (5).

**V.     Defendant Valenti's Rule 60(B) motion should not be granted because Defendant Valenti has no defense to this foreclosure proceeding and granting her Rule 60(B) motion would waste judicial resources and cause prejudice to Plaintiff's assignee.**

Defendant Valenti's Rule 60(B) was filed on the brink of sheriff's sale and is but an effort to gain leverage in settlement negotiations with Plaintiff's assignee. Plaintiff's assignee has already made one loan modification offer to Defendant Valenti six months ago, on August 20, 2007, an offer that lapsed October 1, 2007. Instead, Defendant Valenti is now demanding that

G:\Cases - TM\07-1675 1\Memo Contra 60(b)-080312-KNM.wpd     13

COPY

Plaintiff's assignee write off some $40,000 of her balance of approximately $130,000, for a loan on which she is behind in payments some fifteen months.

Again, Defendant Valenti cannot claim that she is not in default on her note and mortgage. As a result, providing her the opportunity to defend this foreclosure proceeding would waste judicial resources and further prejudice Plaintiff's assignee.

### Conclusion

Defendant Valenti has not met her burden under Ohio Civ.R. 60(B) to demonstrate a meritorious defense nor that she is entitled to relief under one of the grounds stated in Ohio Civ.R. 60(B). GTE Automatic Electric, Inc. v. ARC Industries, Inc. (1976), 47 Ohio St. 2d 146, 150-51. Defendant Valenti is in default on her note and mortgage, was properly served, failed to answer the Complaint, and valid default judgment was taken against her. Defendant Valenti is merely filing her Rule 60(B) motion to delay these proceedings and gain leverage in settlement negotiations with Plaintiff's assignee. As such, her Rule 60(B) motion should be denied.

Respectfully submitted,

Matthew J. Richardson (0077157)
Manley Deas Kochalski LLC
P. O. Box 165028
Columbus, OH 43216-5028
Telephone: 614-222-4921
Fax: 614-220-5613
Email: mjr2@mdk-llc.com
Attorney for Plaintiff

G:\Cases - TM\07-16751\Memo Contra 60(b)-080312-KNM.wpd

14

COPY

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Plaintiff's Memorandum

Contra Defendant Kimberly A. Valenti, Trustee of the Kimberly A. Valenti Trust's 60(b)

Motion to Vacate Judgment Entry Order of August 9, 2007 was sent to the following by

ordinary U.S. Mail, postage prepaid, this _____ day of March, 2008:

Robert L. Kutina
5977 Ogilby Drive
Hudson, OH 44236

Kimberly A. Kutina
5977 Ogilby Drive
Hudson, OH 44236

The Kimberly A. Valenti Trust, Kimberly A.
Valenti, Trustor and Trustee
5977 Ogilby Drive
Hudson, OH 44236

Summit County Fiscal Officer
175 South Main Street
Akron, OH 44308

David W. Cliffe
Attorney for Huntington National Bank
525 Vine Street
Suite 800
Cincinnati, OH 45202

Donald P. Mitchell, Jr.
3766 Fishcreek Rd., #267
Stow, OH 44224

Matthew J. Richardson

COPY
COPY

DIANA ZALESKI

2005 AUG -8  AM 7:33

SUMMIT COUNTY
CLERK OF COURTS

**IN THE COURT OF COMMON PLEAS**
**SUMMIT COUNTY, OHIO**

| | |
|---|---|
| The Huntington National Bank<br>2361 Morse Road<br>NC2W24<br>Columbus, OH 43229 | CASE NO. 2005-08-4469<br>ASSIGNED TO JUDGE BURNHAM UNRUH |
| Plaintiff, | JUDGE _____ |
| vs. | |
| Robert L. Kutina<br>15801 Edgewood<br>Maple Heights, OH 44137 | **COMPLAINT FOR MONEY,<br>FORECLOSURE, AND OTHER<br>EQUITABLE RELIEF AND<br>NOTICE UNDER THE FAIR DEBT<br>COLLECTION PRACTICES ACT** |
| The Kimberly A. Valenti Trust,<br>Kimberly A. Valenti, Trustor and Trustee<br>5977 Ogilby Drive<br>Hudson, OH 44236 | |
| GreenPoint Mortgage Corp.<br>5032 Parkway Plaza Blvd.<br>Building 8<br>Charlotte, NC 28217 | |
| Summit County Treasurer<br>175 S. Main Street, 3rd Floor<br>Akron, OH 44308 | |
| Defendants. | |

REIMER, WENINGER & REIS
CO., L.P.A.
PO SOUTH THIRD STREET, SUITE 100
COLUMBUS, OHIO 43215-4175

(614) 228-7272
FAX (614) 222-3185
FAX (614) 223-3185
FAX (614) 222-3185
FAX (614) 221-6627

◄ EXHIBIT A

COPY

## FIRST CLAIM

1.    Plaintiff says that it is the owner and holder of a Promissory Note, a copy of which is attached hereto, marked "Exhibit "A" and made a part hereof; that by reason of default in the terms of the Note and Mortgage securing same, it has declared said debt due; that there is due and owing from Defendant, Robert L. Kutina unpaid thereon the sum of $11,831.10 plus interest at the rate of 7.74% per annum from February 3, 2005.

## SECOND CLAIM

2.    Plaintiff incorporates herein by reference all of the allegations contained in its First Claim, and further says that it is the owner and holder of a certain Mortgage securing the payment of said Promissory Note, a copy of which is attached hereto, marked "Exhibit B" and made a part hereof; that said mortgage is a good, valid, and subsisting lien upon said premises.

3.    Plaintiff says that the conditions of said mortgage have been broken and the same has become absolute.

4.    Plaintiff says that pursuant to the covenants and conditions of said mortgage it may, from time to time during the pendency of this action, advance sums to pay real estate taxes, hazard insurance premiums and property protection and maintenance.

5.    Plaintiff says that the Defendants named herein have or may have claim to have an interest in the real property described in the Plaintiff's mortgage.

**WHEREFORE,** Plaintiff demands:

(1)    On its First Claim, judgment against the Defendant, Robert L. Kutina, in the sum of $11,831.10 plus interest at the rate of 7.74% per annum from February 3, 2005,

ALTMAN, WEINBERG & REIS
Co., L.P.A.
1 SOUTH THIRD STREET, SUITE 100
COLUMBUS, OHIO 43215-3177

(614) 228-3272
FAX (614) 222-2161
FAX (614) 222-2160
FAX (614) 222-2106
FAX (614) 233-6829

COPY

and costs; plus any sums advanced to pay real estate taxes, hazard insurance premiums and property protection and maintenance, plus late charges and interest from the date of any such advancements;

(2)     On its Second Claim, that it be found to have a good, valid, and subsisting lien on the premises herein described for the amount owing together with its advances for taxes, hazard insurance, property protection, late charges and maintenance plus interest; that said mortgage and Defendant's equity of redemption be foreclosed; that all of the parties hereto answer as to their interests in the premises or be forever barred from asserting the same; that all liens be marshalled and their priorities determined; that said premises be sold as if upon execution, and the proceeds of said sale be applied according to law; and a Writ of Possession of the premises for the purchasers at the Sheriff's Sale.

(3)     For such other relief as is just and equitable.

WELTMAN, WEINBERG & REIS CO., L.P.A.

ANGELA K. CORIELL (#0076302)
Attorney for Plaintiff
175 South Third Street, Ste 900
Columbus, OH  43215
(614)  857-4392
(614)  233-6826 FAX
acoriell@weltman.com
WWR# 04433503-COL

/cpw



COPY

**HUNTINGTON BANKS**



**PERSONAL LOAN AGREEMENT**
Fixed Interest Rate

89072820-001-0/1
Loan No: 20008871290
City Office: SOLON
Date: DECEMBER 19, 1998

The agreement is a promissory note which states the terms of your simple interest rate loan. We need you to understand the terms of your loan. Please read this agreement carefully and if you agree to these terms, sign your name below. "You" and "your" mean each person who signs this agreement. Each of you is responsible both individually and jointly under this agreement (known as "joint and several" responsibility). "We", "us" and "our" mean The Huntington National Bank, with its main office in Columbus, Ohio.

**Promise to Pay**
By signing this agreement, you promise to pay us the principal amount of
FIFTEEN THOUSAND ONE HUNDRED DOLLARS AND 00 CENTS ................... $15,100.00
together with daily simple interest from the date of this agreement (or, if completed, from DECEMBER 27, 1998 ), at the rate of 7.74 % per year. Daily simple interest means that interest is charged each day on the unpaid balance of the principal amount of this loan after applying our payments you have made.

**Payments**
You agree to pay this loan according to the payment schedule shown in the Federal disclosures below, except that on the last payment due date, you must pay us the outstanding balance of the principal amount and any accrued but unpaid interest and other charges. All payments are due on the same date of the month as the first payment, or on the last day of any month that does not have a corresponding date. You agree that we may apply all payments first to earned interest, and then to the principal amount and/or other charges as we determine. If we receive any payment after our cutoff time on a given day, that payment will be considered received on the following business day.

**Credit Insurance Section**

If you qualify, you may buy credit life and credit disability insurance. The details are in the Policy. Insurance which we will give to you. Credit life insurance and credit disability insurance are not required to obtain this loan and will not be provided unless each of you to be insured qualifies and signs below, indicating your agreement to pay the additional cost for the type of coverage selected. Any insurance benefit may not pay this loan in full.
If you have elected credit insurance coverage, the applicable premium is shown for the type of coverage elected. Each person to be insured must sign the corresponding signature line.
Eligibility: Your signature below means that you understand that you must be less than age 66 to get the insurance. It also means that you certify that: (1) during the past 3 years you have not been treated for, or been told you had Heart Disease; Cancer or Tumor; Diabetes; Stroke; Liver or Kidney Disease; Alcoholism; Drug Addiction; any Brain, Nervous System or Mental/Neurological Disorder; Acquired Immune Deficiency Syndrome (AIDS) or AIDS related complex, condition or disorder (ARC); and, (2) if applying for disability insurance you have not lost more than 15 consecutive days from work due to back/neck problems during the past 3 years and you are gainfully employed for wage or profit at least 30 hours per week.

Life Coverage: ____ Gross ____ Net

____ Single Credit Life   ____ Single Disability   ____ Single Credit Life   ____ Joint Credit Life   ____ Joint Credit Life and
                                                           and Disability                                  Single Disability

Life Premium _____ ; ____ Mo. Payments of $ _____   Balloon Payments are not covered
Disability Premium _____   Final Payment of $ _____   by Disability Insurance

Signature of Insured Debtor _____   Signature of Joint Insured Debtor (Life Only) _____
Effective Date ____N/A____   Expiration Date ____N/A____

Upon acceptance by USLIFE Credit Life Insurance Company, Schaumburg, IL 60173, the insurance shall be effective as of the effective date shown above.

Warning: Any person who, with intent to defraud or knowing that he is facilitating a fraud against an insurer, submits an application or files a claim containing a false or deceptive statement is guilty of insurance fraud.
1360HB-OH

**Federal Disclosures**
The following disclosures are required to be given by federal law.

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 7.84 % | $10,819.06 | $15,000.00 | $25,819.06 |

Your payment schedule will be (final payment amount is estimated):

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 179 | $142.32 | Monthly beginning on  FEBRUARY 03, 1999 |
| 1 | $143.78 | Final Payment Due:  JANUARY 03, 2014 |

Security: This loan will be secured by a security interest in real estate located at: 5977 DOLBY DR
HUDSON OH 44236-3943

Flood Insd  ___N/A___

Late charge: If a payment is more than 10 days late, you will be charged  $15.00.

Prepayment: If you pay off early, you may have to pay a penalty, and you will not be entitled to a refund of the loan fee.

Assumption: (check box if applicable)  ☐ Someone buying your home cannot assume the remainder of this obligation on its original terms.

Required deposit: (check box if applicable)  ☐ The annual percentage rate does not take into account your required deposit.

See the other parts of this agreement and any other contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, prepayment penalties, and security interests.

**THE TERMS ON THE REVERSE SIDE ARE PART OF THIS AGREEMENT**

**Acknowledgments**
If you have received a completed copy of this agreement and agree to its terms, please sign your name below. Each person who signs will be responsible for paying this loan in full. You acknowledge and agree that a) none of our employees or agents have told you anything about this transaction that does not agree with, or is not covered in, the terms of this agreement; b) you have not made any oral or side agreements with us about the terms of this transaction; c) you have read the entire agreement on both sides of this page; d) you have received a copy of an Itemization of Amount Financed, a HUD-1 Settlement Statement, or a HUD-1A Settlement Statement; and (e) if you elected any credit insurance, you have received a copy of a certificate of insurance.

**CO-SIGNERS: PLEASE READ IMPORTANT NOTICE ON REVERSE SIDE BEFORE SIGNING.**

Signature: X _____   Signature: _____
                ROBERT E KUTKA

Signature: _____   Signature: _____

0F01120 (Rev 7/97)
(print last 1 part tune)                                     OR Bank Copy  ( ) File Copy  ( ) Customer Copy

**Early payment in full**

In connection with the interest rate provided in this agreement, you will have to pay a prepayment charge of $75 if you voluntarily pay this loan in full more than 12 months before the final payment date shown in the Federal disclosure. However, if this loan is secured by a mortgage on residential real estate: (i) the prepayment charge will be the lesser of 1% of the original principal amount of this loan or $75; and (ii) you will also not have to pay any prepayment charge more than 5 years after the date of this agreement. Partial prepayments will not affect the due dates or required payment amount of your remaining payments so long as there is still an outstanding balance on your loan, unless we agree in writing to the change.

**Late payment charge**

For each payment that we do not receive in full within 10 days after it is due, you agree to pay us a late charge of $25.00.

**Deferral provision**

If you agree to a deferral of any payment(s) (including a hera-a-payment), we may, at our option, defer the payment(s) and charge you our deferral fee for each month your loan is deferred. We will continue to earn interest on the unpaid principal balance. Any loan deferral will not result in an extension of the period of coverage for any credit insurance you have elected.

**Returned item charge**

We can charge you up to $25.00 for each return by a bank or other depository institution of a dishonored check, negotiable order of withdrawal, share draft, preauthorized charge, or other item issued or activated by you for payment to us.

**Loan Fee**

If a loan fee is charged for this loan, it is shown in the itemization of Amount Financed, HUD-1 Settlement Statement, or HUD-1A Settlement Statement. The loan fee is a charge for making the loan and is not refundable.

**Property and lender's single interest insurance**

Until all amounts owed on this loan are paid in full, you agree:
1. to keep any goods or real estate which are collateral for this loan fully insured against loss or damage against such perils as we may require, but not for more than you owe or give any amount owed to any other creditor with an interest prior to ours;
2. to furnish us with evidence of the insurance, naming us as either additional insured and/or loss payee as we require; and
3. if required by us, to purchase lender's single interest insurance as additional protection for us.

You may obtain property insurance and lender's single interest insurance from any insurance company you or the other owners of the collateral choose that we agree is acceptable to us. Any such insurance must provide coverage during the full term of this loan. If you get lender's single interest insurance from or through us, you agree to pay the premium amount shown on the itemization of Amount Financed, HUD-1 Settlement Statement, or HUD-1A Settlement Statement. Lender's single interest insurance covers only us and not you, and it will apply for covered damage to the collateral if we recover the collateral after your default and your insurance on the collateral is not available.

If the collateral is not lost, insured, we may (if we choose) do so ourselves. If we do, you must reimburse us. If you do not reimburse us, we may add the cost to the unpaid principal amount of this loan and increase either the number or amount of the remaining payments.

**Default**

You agree that, after giving you notice and right to cure required by law (if any), we can require you to pay, and you agree to pay, immediately the full unpaid balance of the principal amount and any accrued but unpaid interest and other charges (this is our "acceleration" right), if we can require you to furnish more collateral:
1. if you fail to pay any payment when due;
2. if any promise under this agreement, any security agreement securing this loan, or any other agreement with us are broken;
3. if you or any guarantor or surety for this agreement die;
4. if you or any contractor or surety for this agreement become subject to Title 11 of the United States Code (Bankruptcy Code);
5. if the security for this agreement is damaged, destroyed, stolen, forfeited, seized or otherwise impaired; or
6. if anything else happens which we think endangers your ability to pay us.

If you are in default, we may realize on any collateral for this loan as provided in the applicable security instrument or we may bring a lawsuit to collect the amounts owed. To the extent any collateral or insurance covering collateral is not sufficient to pay all amounts owed, you will be liable for any deficiency. Except as otherwise required by law, none of our remedies are exclusive or alternative, and we may exercise them subsequently or at the same time.

**Default costs and expenses**

If you default, you will have to pay the following costs and expenses we incur, to the extent not prohibited by law:
1. our reasonable attorney fees if we hire an attorney who is not our employee;
2. court costs; and
3. reasonable costs and expenses of taking possession, holding, preparing for sale and selling any collateral for this loan.

If you default by these amounts to us when we get you to. If you do not, we may add these costs to the unpaid balance of the principal amount, charge interest thereon at the rate or rates provided in this agreement, and increase either the number or the amount of the remaining payments.

**Set-off**

You agree that we have the right of set-off. This means that we may apply any money in any deposit account with us on which your name appears as owner or co-maker to the payment of the amount you owe us which is due.

**Waiver**

We agree that any security interest which is not disclosed in the Federal disclosures, and which secures any other present or future loan from us, does not secure this loan.

**Other terms**

If we finance or pay for any credit, property or other insurance or service contract, warranty, or DAP coverage, you agree that we may apply any refund of premiums or charges for such products or services in payment of the amount you owe us, even if none of your payments are past due. We may receive some value from other products and payment paid to customers with the loan. Your entire agreement of this agreement. You waive all relief from valuation and appraisement laws, to the extent not prohibited by law. We may delay enforcing any of our rights against you or any number of times without losing any rights against you or others. We may release this agreement against your estate. We have the right to assign this agreement, and anyone to whom we assign this agreement has all of our rights. Except as otherwise required by law, notice to you or any one of you will constitute notice to all of you. In addition to the rights we have under this agreement, we also have any other rights available to us at law or in equity.

**Governing law**

This agreement is governed by federal and Ohio law.

---

**NOTICE**

☒ IF MARKED, ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.

---

**NOTICE TO COSIGNER**

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The bank can collect this debt from you without first trying to collect from the borrower. The bank can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become part of your credit record.

This notice is not the contract that makes you liable for the debt.

COPY





OPEN-END MORTGAGE

**SOUTHWEST FINANCIAL** Huntington Banks

EXHIBIT B

2000967l290

OPEN-END MORTGAGE (the "Mortgage") given by ROBERT L. KUTINA and KIMBERLY A. KUTINA, who are husband and wife, (the "Mortgagor", whether one or more, whose address is 5977 OGILBY DR, HUDSON, OH 442283543 to HUNTINGTON NATIONAL BANK, a national banking association, (the "Mortgagee"), whose address is 580 Cochran Blvd., Crestview Hills, Ky. 41017.

WHEREAS, ROBERT L. KUTINA (the "Borrower", whether one or more) is entering or has entered into a promissory note (the "Note")(in favor) of Mortgagee, dated **December 19, 1998**, for an amount of **Fifteen thousand one hundred dollars and 00/100** Dollars ($15,100.00 ), which amount is

SITUATED IN THE COUNTY OF SUMMIT, IN THE STATE OF OHIO AND IN THE TOWNSHIP OF HUDSON AND KNOWN AS BEING LOT 103 PLYMOUTH VILLAGE ALLOTMENT SECTION E AS RECORDED IN PLAT BOOK 84 PAGE 14 OF SUMMIT COUNTY RECORDS, BE THE SAME MORE OR LESS.

SUBJECT TO LEGAL HIGHWAYS OF RECORD.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN INSTRUMENT NO. 54204415 OF THE SUMMIT COUNTY, OHIO RECORDS.

ALSO KNOWN AS: 5977 OGILBY DR, HUDSON OH 442283543

MORTGAGOR FURTHER COVENANTS AND AGREES:

1. To pay the Note (and any) for any Mortgagor who is also a Borrower; and to pay when due all indebtedness other than the Note secured by a lien upon said premises, ...

2. To pay all taxes and assessments against said premises ...

3. To keep and maintain all buildings now or hereafter situated upon the said premises at all times in good repair ...

4. To keep the premises insured against loss or damage by fire, windstorm, flood, and such other hazards ...

5. To perform all the covenants on the part of Mortgagor to be performed under the provisions of this Mortgage and any prior mortgage ...

6. To make no sale or transfer of the legal title to the premises or any equitable interest therein ...

7. To pay Mortgagee interest at the same rate as provided for in the Note on all sums advanced by Mortgagee for the benefit of Mortgagor ...

CONTINUED ON REVERSE SIDE

54237314
Page: 1 of 2
01/07/1999 02:18a
JAMES B MCCARTHY SUMMIT CO AUDITOR 14.00

COPY

CONTINUED FROM REVERSE SIDE

8. That Mortgagee is authorized to collect all damages paid ... ... made as a result of the appropriation by or in lieu of ... ... main of all or ... part of said premises, and apply the net proceeds thereto ... ... credit upon any part of the indebtedness secured hereby ... ... then due or thereafter becoming due.

9. That upon the occurrence of any breach or ... or default under the Note, or any renewals, refinancings, modifications, extensions, replacements or substitutions thereof or of the same thereof, or under this Mortgage, or upon foreclosure or another forfeiture, and following any notice and/or the expiration of any time period required by law, Mortgagee may declare all amounts secured by the Mortgage to be immediately due and payable without further notice or demand, and may foreclose this Mortgage by judicial proceeding in accordance with applicable law. Mortgagee shall be entitled to collect in such proceeding all costs and disbursements to which Mortgagee may become entitled by law in connection with such foreclosure proceeding, including but not limited to Mortgagee's attorney fees to the extent not prohibited by applicable law.

10. That upon commencement of any judicial proceeding to enforce any right under this Mortgage, the court in which such proceeding is brought, or any time thereafter, without notice to Mortgagor or any party claiming under Mortgagor (such notice being hereby expressly waived) and without reference to the then value of the premises, to the use of said premises as a homestead or to the solvency or insolvency of any person liable for the indebtedness secured hereby or either grounds for extraordinary relief, may appoint a receiver for the benefit of Mortgagee with power to take immediate possession of the premises, manage, rent and collect the rents, issues and profits thereof and such rents, issues and profits when collected may be applied toward the payment of any indebtedness then due and secured hereby and the costs, taxes, insurance or other items necessary for the protection and preservation of the premises, including the expenses of such receivership.

11. That each of the covenants and agreements hereof shall be binding upon and shall inure to the benefit of the respective heirs, executors, administrators, successors and assigns of Mortgagor and Mortgagee herein. Mortgagee has the right to assign this Mortgage, and no obligations secured hereby, without notice to Mortgagor except as may be required by law. The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the premises are located, except that if the Note executed hereby specifies the law of a different jurisdiction as governing, such laws shall be the applicable law governing the interest rate, fees, charges, and other terms of the credit transaction secured hereby. The foregoing sentence shall not limit the applicability of federal law to the Mortgage or the obligations secured hereby. If more than one person is a Mortgagor, all covenants and agreements of Mortgagor hereunder shall be joint and several. Any Mortgagor who signs this Mortgage, but does not sign the Note (i) is signing this Mortgage only to mortgage, grant, bargain, sell, and convey that Mortgagor's interest in the premises to Mortgagee under the terms of this Mortgage, (ii) is not personally liable on the Note or this Mortgage, and (iii) agrees that Mortgagee and any other holder of this Mortgage may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the obligations secured hereby without notice to that Mortgagor or that Mortgagor's consent and without releasing that Mortgagor or modifying this Mortgage as to that Mortgagor's interest in the premises.

12. That the Mortgagee is empowered to do all things provided to be done by a mortgagee under Section 1311.14 of the Revised Code of the State of Ohio, and amendments thereto.

13. In the event that this Mortgage, the indebtedness secured hereby or the evidence thereof shall become subject to taxation by any jurisdiction, then all amounts secured hereto shall, at the option of Mortgagee, become immediately due and payable.

14. This Mortgage shall remain in full force and effect notwithstanding one or more renewals, refinancings, modifications, extensions, replacements or substitutions of the Note or of the terms thereof and notwithstanding the fact that any such renewals, refinancings, modifications, extensions, replacements or substitutions of the Note or of the terms thereof may be evidenced by a document or documents signed and dated after the date of this Mortgage or the recording of this Mortgage.

15. That no delay by Mortgagee in the exercise of any of its rights hereunder shall preclude the exercise thereof so long as there is any breach of a condition or default under this Mortgage, and no failure of Mortgagee to exercise any of its rights hereunder shall preclude the exercise thereof in the event of a subsequent breach or default. Mortgagee may enforce any one or more of its rights or remedies hereunder successively or concurrently. If the lien of this Mortgage is invalid or unenforceable as to any part of the obligations hereby secured or as to any part of the premises, the unsecured or partially secured portion of the obligations shall be completely paid prior to the payment of the secured or partially secured portion of the obligations hereby secured. In the event any provision of this Mortgage is deemed invalid or unenforceable for any reason, such invalidity shall not affect the other provisions of this Mortgage, which shall be deemed severable and shall remain in full force and effect.

PROVIDED ALWAYS that these presents are upon the following conditions that if Borrower shall pay according to its terms the Note, bearing interest at the rate specified therein, together with all other sums secured hereby, and Mortgagor shall keep and perform the several covenants and agreements set forth above, this Mortgage shall be void; otherwise the same shall remain in full force and virtue in law. Mortgagor shall pay the cost of recording any release or satisfaction of this Mortgage.

MORTGAGOR AND ANY MORTGAGOR'S SPOUSE who signs this Mortgage (whether or not such spouse is named in this Mortgage as a Mortgagor) do hereby waive, release and forever quitclaim unto Mortgagee any homestead or other exemption rights with respect to the premises and all rights of dower in and to the premises.

IN WITNESS WHEREOF, this Mortgage has been executed at Solon , Ohio , this 19th day of December , 19 98.

Signed and acknowledged in the presence of:

(Witness to all signatures) Michelle A. Abbott

(Witness to all signatures) Ann M. Ober

ROBERT L. KUTINA

KIMBERLY A. KUTINA

STATE OF Ohio
COUNTY OF Cuyahoga } SS.

The foregoing instrument was acknowledged before me this 19th day of December , 19 98, by ROBERT L. KUTINA and KIMBERLY A. KUTINA.

This instrument prepared by: Rory T. Chew, Attorney at Law

Notary Public

MICHELLE L. ABBOTT
Notary Public - State of Ohio
My Commission Expires June 17, 2001

OPEN-END MORTGAGE

54237314
Page: 2 of 2
01/07/1999 00:100
RD 11.00
JAMES B ROGGERTRY BUNTY? CO AUDITOR

COPY

## NOTICE UNDER THE
## FAIR DEBT COLLECTION
## PRACTICES ACT

If your name(s) appear in paragraph one of Count One of this Complaint, the following notice applies to you.

1.    The purpose of the attached documents is to collect a debt.    Any information you provide to WELTMAN, WEINBERG & REIS CO., L.P.A. will be used for that purpose.

2.    The amount of the debt is stated in paragraph one of Count One of this Complaint.

3.    The Plaintiff as named in this Complaint is the creditor to whom the debt is owed.

4.    The debt described in this Complaint and evidenced by the copy of the mortgage note attached hereto will be assumed to be valid by WELTMAN, WEINBERG & REIS CO., L.P.A., unless, within thirty days after receipt of this notice, you dispute, in writing, the validity of the debt or some portion thereof.

5.    If you notify WELTMAN, WEINBERG & REIS CO., L.P.A. in writing within thirty days of the receipt of this notice that the debt or any portion thereof is disputed, WELTMAN, WEINBERG & REIS CO., L.P.A. will obtain verification of the debt and a copy of the verification will be mailed to you by WELTMAN, WEINBERG & REIS CO., L.P.A.

6.    If the creditor named as Plaintiff in this Complaint is not the original creditor, and if you make a written request to WELTMAN, WEINBERG & REIS CO., L.P.A. within thirty days of the receipt of this notice, the name and address of the original creditor will be mailed to you by WELTMAN, WEINBERG & REIS CO., L.P.A.

7.    Written requests should be addressed to WELTMAN, WEINBERG & REIS CO., L.P.A., 175 South Third Street, Ste 900, Columbus, OH  43215

WELTMAN, WEINBERG & REIS
CO., L.P.A.
175 SOUTH THIRD STREET, SUITE 900
COLUMBUS, OHIO 43215-5177

(614) 228-7272
FAX (614) 222-4181
FAX (614) 222-3193
FAX (614) 222-2166
FAX (614) 723-4471

8.    If you read the summons issued by the Clerk of Courts you will see you have 28 days to file an answer.  You must do so within that time or you will be in default. The 30 day right for verification of the debt, as set forth in paragraph 4 above, is separate from the 28 days you have to file your answer with the Court. Do not confuse the two. Your request for verification of the debt will not relieve you of the need to file your answer within 28 days.

COPY

SUMMIT COUNTY COURT OF COMMON PLEAS

2007 JUL -2 PM 3: 56

GreenPoint Mortgage Funding, Inc.,                 Case No. CV-2007-05-3858
                                        SUMMIT COUNTY
        Plaintiff,                      CLERK OF COURTS

vs.

Robert L. Kutina, et al.,                   **RETURN OF PERSON**
                                            **APPOINTED TO SERVE**
        Defendants.


**STATE OF OHIO**
**SUMMIT COUNTY: SS**

I, JASON BUTLER, being first duly sworn, depose and say that I am a person
appointed by the Honorable Judge Spicer, Judge of the Court of Common Pleas of
Summit County, to serve a Summons, together with Complaint for Foreclosure, in
the within action, on:
KIMBERLY A. KUTINA,
that I received said Summons and Complaint on the 1st day of June, 2007 at
4:00 P.M., and on the 5th day of June, 2007 at 8:00 P.M., I served same by
delivering copies of the above-described documents to a female resident believed to
be Kimberly A. Kutina, personally, at her residential address as given on the
summons.

                          _Jason Butler_
                          **JASON BUTLER**
                          **SPECIAL COURT APPOINTED PROCESS SERVER**


SWORN TO before me and subscribed
in my presence this 29th day of June, 2007,


Richard D. Purser
**NOTARY PUBLIC - STATE OF OHIO**
**Residence - Medina County**
**My Commission Expires April 5, 2009**

EXHIBIT B

COPY

**COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO**
GREENPOINT MORTGAGE FUNDING, INC.
2300 BROOKSTONE CTR. PKWY.
COLUMBUS, GA 31904

           Plaintiff        Case No.   CV-2007-05-3858 7

    vs           **SUMMONS**

KUTINA, ROBERT L.
5977 OGILBY DR.
HUDSON, OH 44236

        Defendant

To the following named defendants:
    KUTINA, KIMBERLY A.
    5977 OGILBY DR.
    HUDSON, OH 44236

You have been named defendant(s) in a complaint filed in Summit County Court Of Common Pleas, Summit County Court House, Akron Ohio 44308, by :
    GREENPOINT MORTGAGE FUNDING, INC.
    2300 BROOKSTONE CTR. PKWY.
    COLUMBUS, GA 31904

Plaintiff(s). A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:
    MATTHEW J.. RICHARDSON,
    P.O. BOX 165028
    COLUMBUS, OH 432165028

**You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint within twenty-eight days after service of this summons on you, exclusive of day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record.**

If you fail to appear and defend, judgment by default may be rendered against you for the relief demanded in the complaint.

**Daniel M. Horrigan, Clerk, Court Of Common Pleas, Summit County, Ohio**

    May 31, 2007           By: s/ M. Randles  Deputy Clerk

TO SHERIFF OR PROCESS SERVER,

You are hereby requested to make PERSONAL OR RESIDENCE service upon
KUTINA, KIMBERLY A.

                   **RETURN OF SERVICE**
Received this summons on the ___ day of _____, 20___, at _____ M.
and the ___ day of _____, 20___, at _____ M. I served the
same upon
By delivering to _____ personally a true
copy of summons, a copy of the complaint and accompanying documents.

COPY

2007 JUL -2 PM 3: 56

GreenPoint Mortgage Funding, Inc.,

Case No. CV-2007-05-3858

Plaintiff,

SUMMIT COUNTY
CLERK OF COURTS

vs.

Robert L. Kutina, et al.,

RETURN OF PERSON
APPOINTED TO SERVE

Defendants.

STATE OF OHIO
SUMMIT COUNTY: SS

I, JASON BUTLER, being first duly sworn, depose and say that I am a person
appointed by the Honorable Judge Spicer, Judge of the Court of Common Pleas of
Summit County, to serve a Summons, together with Complaint for Foreclosure, in
the within action, on:
ROBERT L. KUTINA,
that I received said Summons and Complaint on the 1st day of June, 2007 at
4:00 P.M., and on the 5th day of June, 2007 at 8:00 P.M., I served same by
delivering copies of the above-described documents to a female resident believed to
be Kimberly A. Kutina, co-resident of Robert L. Kutina, at their residential address
as given on the summons.

*Jason Butler*

JASON BUTLER
SPECIAL COURT APPOINTED PROCESS SERVER

SWORN TO before me and subscribed
in my presence this 2TH day of June, 2007,

Richard D. Purser
NOTARY PUBLIC - STATE OF OHIO
Residence - Medina County
My Commission Expires April 5, 2009

EXHIBIT C

COPY

**COURT OF COMMON PLEAS, SUMMIT COUNTY, OHIO**

GREENPOINT MORTGAGE FUNDING, INC.
2300 BROOKSTONE CTR. PKWY.
COLUMBUS, GA 31904

Plaintiff          Case No.    CV-2007-05-3858 6

vs          **SUMMONS**

KUTINA, ROBERT L.
5977 OGILBY DR.
HUDSON, OH 44236

Defendant

To the following named defendants:
KUTINA, ROBERT L.
5977 OGILBY DR.
HUDSON, OH 44236

You have been named defendant(s) in a complaint filed in Summit County Court Of Common Pleas, Summit County Court House, Akron Ohio 44308, by :
GREENPOINT MORTGAGE FUNDING, INC.
2300 BROOKSTONE CTR. PKWY.
COLUMBUS, GA 31904

Plaintiff(s). A copy of the complaint is attached hereto. The name and address of the plaintiff's attorney is:
MATTHEW J. RICHARDSON,
P.O. BOX 165028
COLUMBUS, OH 432165026

You are hereby summoned and required to serve upon the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record, a copy of an answer to the complaint within twenty-eight days after service of this summons on you, exclusive of day of service. Your answer must be filed with the Court within three days after the service of a copy of the answer on the plaintiff's attorney, or upon the plaintiff, if he has no attorney of record.

If you fail to appear and defend, judgment by default may be rendered against you for the relief demanded in the complaint.

Daniel M. Horrigan, Clerk, Court Of Common Pleas, Summit County, Ohio

May 31, 2007          By: s/ M. Randles  Deputy Clerk

TO SHERIFF OR PROCESS SERVER,

You are hereby requested to make PERSONAL OR RESIDENCE service upon
KUTINA, ROBERT L.
**RETURN OF SERVICE**
Received this summons on the ____ day of _____, 20___, at _____ M.
and the ___ day of _____, 20___, at _____ M. I served the
same upon
By delivering to _____ personally a true
copy of summons, a copy of the complaint and accompanying documents.

COPY

**IN THE COURT OF COMMON PLEAS**
**SUMMIT COUNTY, OHIO**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

GreenPoint Mortgage Funding, Inc.

    Plaintiff,

    vs.

Robert L. Kutina, et al.

    Defendants.

Case No. CV-2007-05-3858

Judge Elinore M. Stormer

**AFFIDAVIT OF THAYER A.**
**HORTON**

STATE OF    <u>Ohio</u>    )
                     ) SS
COUNTY OF   <u>Franklin</u>  )

Thayer A. Horton ("Affiant"), being first duly sworn according to law, deposes and says on the basis of personal knowledge:

1.    Affiant is manager of the service department of Manley Deas Kochalski LLC and is competent to testify to the matters stated in this Affidavit.

2.    Defendant Robert Kutina's last known and best address is the address referenced on the first page of the Complaint as 5977 Ogilby Drive, Hudson, OH 44236.

3.    To determine Defendant Robert Kutina's last known and best address, I conducted a skip-trace investigation, which yielded the address referenced on the first page of the Complaint as the most recent address.

4.    I instructed process server Jason Butler to use this address to effect service of process on Defendant Robert Kutina under Ohio Civ.R. 4.1(B) and (C).

5.    Affiant further sayeth naught.

EXHIBIT D

G:\Cases - TM\07-16751\Thayer Affidavit-080313-KNM.wpd

COPY

_-- Thayer A. Horton_

Subscribed and sworn to before me, a Notary Public, this **13** day of **MARCH**,
2008.

Notary Public



MATTHEW J. RICHARDSON
Attorney At Law
Notary Public, State of Ohio
My commission has no expiration date.
Sec. 147.03 R.C.

G:\Cases - TM\07-16751\Thayer Affidavit-080313-KNM.wpd

24/7 Search and Technical Assistance 1.800.343.5892
Main Menu | My Account | Help | Contact Us | Log Out

People | Businesses | Assets | Location | Phones | Courts

| Last Name | First Name | Middle Name | SSN | |
|---|---|---|---|---|
| | | | 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 | Reference Code: |
| Street Address | City | State | Zip | County | Radius | 07-16751 |
| Phone | DOB | Age Range | | |

☐ Search for other possible name spellings   ☐ Include Bankruptcies (Click For Prices)

Output Type:  ⦿ Formatted HTML   ○ Cut and Paste / Printer Friendly Text (No Reports)

Important: The Public Records and commercially available data sources used in this system have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

**Search completed**                    **Records: 1 to 10 of 10**

SEARCH: SSN: 261728063                   Edit Search | New Search

| All | Full Name | SSN | Address | Phone Information | |
|---|---|---|---|---|---|
| | ROBERT L KUTINA | | 5077 OGILBY DR HUDSON OH 44236-3943 Sep 96 - Feb 08 | | Next Steps |
| | ROBERT L KUTINA | | 1385 CECIL DR STREETSBORO OH 44241-5351 Mar 05 | | Next Steps |
| | ROBERT LOUIS KUTINA JR | | 20808 CLARE AVE MAPLE HEIGHTS OH 44137-2404 Feb 03 - Sep 03 | | Next Steps |
| | ROBERT LOUIS KUTINA JR | | 15609 RAYMOND ST MAPLE HEIGHTS OH 44137-3512 Jun 03 - Apr 02 | | Next Steps |
| | ROBERT L KUTINA | | 15601 EDGEWOOD AVE MAPLE HEIGHTS OH 44137-3913 Feb 00 | | Next Steps |
| | ROBERT L KUTINA | | 5837 TURNEY RD CLEVELAND OH 44125-4480 Mar 91 - Dec 92 | | Next Steps |
| | ROBERT L KUTINA | | 12125 VALLEY LANE OR APT 304 CLEVELAND OH 44125-4540 Oct 87 - Dec 90 | | Next Steps |
| | ROBERT LOUIS KUTINA JR | | 20510 CLARE AVE MAPLE HEIGHTS OH 44137-2402 | | Next Steps |
| | ROBERT L KUTINA | | 15604 EDGEWOOD AVE MAPLE HEIGHTS OH 44137-3914 | | Next Steps |
| | KIM A KUTINA | | 15609 RAYMOND ST MAPLE HEIGHTS OH 44137-3512 | | Next Steps |

**Records: 1 to 10 of 10**

SEARCH: SSN: 261728063                   Edit Search | New Search

COPY



**First Mortgage Strategies Group**

August 20, 2007

Jeff James

RE: Loan # 4410015 Modification Proposal
    Robert L. Kutina
    Kimberly A. Kutina
    5977 Ogilby
    Hudson, OH 44236

Dear Mr. James:

Per my telephone conversation with Kimberly, please be advised that we are offering a modification to help her reinstate her loan under the following conditions:

| | OLD | NEW |
|---|---|---|
| Principal Balance | $108,811.53 | $117,500.00 (see attached for breakdown) |
| P&I | $895.89 | $957.72 |
| Payment | $1,256.56 | $1,356.72 |
| Interest rate | 8.25 % | 8.5 % |
| Maturity | 11-1-2028 | 9-1-31 |
| Due Date | 1-1-2007 | 10-1-2007 |
| Downpayment | | $6,618.67 |

<u>Please have Kimberly sign this page if she wants to request this form of workout to reinstate her loan and return this letter by 8-31-05 with a down payment of $6,618.67.</u>

Since the loan is in the name of Robert and Kimberly Kutina, please provide proof that Robert has quit claimed the property to her. I also need something to reflect her name change.

Feel free to give me a call at 1-800-214-3819, Ext. 106, if you have any further questions.

Sincerely

*Ingrid Bolding*

Ingrid Bolding

I am interested in a modification. Please send the required documents.

X: _____
      Kimberly Kutina

1052 Brookfield Road • Memphis, TN 38119
901 766-9923 • FAX: 901 684-3493

**EXHIBIT E**

**COPY**

August 20, 2007

Robert L. Kutina
5977 Ogilby
Hudson OH 44236

Payoff figures have been requested on the loan for the borrower and property described below.

Loan ID: 0004410015
Robert L. Kutina
Kimberly A. Kutina
5977 Ogilby
Hudson, OH 44236
Loan Type: Conventional

When remitting funds, please use our loan number to insure proper posting and provide us with the borrower's forwarding address. Funds received in this office after 12:00 noon will be processed on the next business day, with interest charged to that date.

All payoff figures are subject to clearance of funds in transit. The payoff is subject to final audit when presented. Any overpayment or refunds will be mailed directly to the borrower. We will prepare the release of our interest in the property after all funds have cleared.

| Projected Payoff Data | 08/31/2007 |
|---|---|
| Principal Balance | $108,811.53 |
| Interest to 08/31/2007 | $6,722.47 |
| Fees | $3,300.98 |
| Prepayment Penalty | $0.00 |
| Release Fees | $0.00 |
| Funds owed by Borrower | $1,707.72 |
| Funds owed to Borrower | $0.00 |
| Total Payoff | $120,542.70 |
| | |
| Per diem | $ 24.59 |

*Handwritten annotations:*
$ 2,720.00 Legal Fees
$ 520.98 Late charges
$ 60.00 NSF Fee
$1,707.72 — Escrow advance

The next payment due is 01/01/2007. Payments are made by Billing on a Monthly basis. The current interest rate is 8.2500% and the P & I payment is $ 895.89. The taxes are next due 12/01/2007 .

**PLEASE CALL THE NUMBER LISTED BELOW TO UPDATE FIGURES PRIOR TO REMITTING FUNDS AS THEY ARE SUBJECT TO CHANGE WITHOUT NOTICE.**

First Mortgage Strategies Group, Mortgage Loan Servicing
P.O. Box 172102
Memphis, TN 38187-2102
(800) 214-3819
(800) 214-3819
(901) 884-3493 Fax

*Handwritten calculations:*
$120,542.70
+ $2,900.76 Escrow short
+ $ 720.00 Unpaid Forede Fees good thru 8.
──────────
$124,118.67
‑ $6,618.67 Down Payme
──────────
$117,500.00 New PB

PO1
8/20/2007

COPY
96641

DANIEL M. HORRIGAN
2008 MAY 19 PM 2:53
SUMMIT COUNTY
CLERK OF COURTS

IN THE COURT OF COMMON PLEAS

COUNTY OF SUMMIT

GREENPOINT MORTGAGE ) CASE NO. CV 2007 05 3858
FUNDING, INC. )
)
    Plaintiff ) JUDGE GIPPIN
)
-vs- ) **O R D E R**
)
) (Resolving Motion for Relief
ROBERT L. KUTINA, et al. ) from Judgment)
    Defendants )

- - -

Defendant Kimberly A. Valenti, for herself and as Trustee of the Kimberly A. Valenti Trust (together, "Valenti"), has moved the Court under Civ. R. 60(B)(1)-(3) and (5) to vacate the Default Judgment entered against her on August 9, 2007, in her individual capacity as a debtor on the note at issue and in her Trustee capacity as the owner of the subject property. The Judgment granted a money judgment and a decree of foreclosure and order of sale. The Motion will be denied as to Valenti, for the reasons set forth below.

However, the Court will vacate the Judgment against Co-Defendant Robert L. Kutina ("Kutina"), since it is and was plain on the record that service was never made on him. The Judgment was therefore entered in error by the Court and it would be unjust to leave the Judgment in force against him.


COPY

## I.    THE RECORD

The Complaint was filed on May 30, 2007, by Plaintiff GreenPoint Mortgage Funding, Inc. Paragraphs 9 and 13 of the Complaint recited that Plaintiff, "is the owner and holder of the Note . . . [and] is the owner and holder of the Mortgage and is entitled to foreclose the Mortgage." Service was attempted on Valenti individually and in her capacity as Trustee by certified mail on May 31, 2007, but the attempt failed because the mail was unclaimed. Service was then completed on Valenti in her capacity as Trustee by ordinary mail sent to the address of the subject property, 5977 Ogilby Drive, Hudson, Ohio 44236, on July 5, 2007.

Service was likewise attempted by certified mail on Kutina on May 31, 2007, to the address of the subject property, but was likewise unclaimed. A process server left the papers for both Valenti individually and for Kutina outside the front door of the subject property on June 5, 2007, after he spoke with Valenti and she then closed the door on him.

The Trustee has submitted an affidavit, in her individual capacity, reciting that Kutina did not then reside at the subject property and had not done so for a number of years. The Preliminary Judicial Report filed by Plaintiff with the Complaint on May 30, 2007, included in its Paragraph 5 a reference to a domestic relations action between Kimberly and Robert Kutina. The address recited for Kimberly Kutina was at the subject property, but for Robert Kutina there was a different address in Maple Heights, Ohio.

No answer was filed other than by Huntington Bank. The Default Judgment was entered on August 9, 2007, as noted above. A Notice of Filing of Assignment of Mortgage from Plaintiff, as successor by merger to Greenpoint Mortgage Corporation, to First Mortgage Strategies Group, Inc., was filed on September 4, 2007. The matter then proceeded in the

09-05190-mss    Doc 29    FILED 04/12/10    ENTERED 04/12/10 11:58:06    Page 105 of 109

COPY

normal course towards a Sheriff's Sale scheduled for March 28, 2008. The present Motion was filed on March 3, 2008. A stay of the Sheriff's Sale was granted on March 10, 2008, but the Motion otherwise remains pending.

Valenti's Affidavit filed with the Motion on March 3, 2007, recited the circumstances of the attempted service of process on June 5, 2007, and that she was ill, including one week of hospitalization, at some unspecified time. There is reference to an attachment concerning her illness, but there is no such document in the record. Attached to her motion, but without any reference in her Affidavit, is a copy of a letter of June 19, 2007, advising Valenti in her individual capacity of the assignment to First Mortgage noted above.

## II.     APPLICABLE LAW

The provisions of Civ. R. 60(B) upon which Valenti relies are as follows:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons:
>
> (1) mistake, inadvertence, surprise or excusable neglect;
>
> (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(B);
>
> (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation or other misconduct of an adverse party; . . . or
>
> (5) any other reason justifying relief from the judgment.
>
> The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order or proceeding was entered or taken.

Motions under the rule are to be considered according to the standards of *GTE Automatic Electric, Inc. v. ARC Industries, Inc.* (1976), 47 Ohio St. 2d 146. In particular, "the movant must *demonstrate* that [she] is entitled to relief." *Id.,* at 151, emphasis added. "[T]he neglect of

3

COPY

a party's attorney will be imputed to the party for the purposes of Civ. R. 60(B)(1)." *Id.*, at 153.

## III.  ANALYSIS

Valenti makes these arguments in favor of her motion: (1) She has meritorious defenses because Plaintiff did not own the mortgage at issue; (2) Kutina was never served; (3) Valenti's former attorney failed to answer and defend the suit and (4) Plaintiff's Affidavit submitted in support of summary judgment was false, because Plaintiff did not then own the mortgage or note.

1.      There is no evidence supporting the first contention, that Plaintiff did not own the mortgage at issue when the Complaint was filed. The mortgage was originally granted to GreenPoint Mortgage Corporation, but the record contains evidence that it was assigned to Plaintiff, as successor by merger. There is no evidence that the assignment occurred after the filing of the Complaint and thus no reason to dispute the Plaintiff's allegations of ownership at that time.

2.      The failure to serve Kutina is irrelevant to Valenti's position in the litigation. She has not suggested that she has any potential cross-claims against Kutina, much less any that would potentially affect Plaintiff's right of foreclosure. Valenti has represented to the Court that she alone owns the subject property, Kutina therefore has no interest in it.

That said, the Default Judgment against Kutina cannot be allowed to stand. There is no evidence that he was served and there is substantial evidence that Plaintiff knew at least constructively, by reason of the Preliminary Judicial Report, that he no longer resided at the subject property. Regardless of what exactly happened at the property when the pleadings for Kutina were left there, that could not have been sufficient service of process on him.

4

COPY

While the present Motion has been filed by Valenti, rather than by Kutina, Civ. R. 60(B) does not require the motion for relief to be filed only by a party seeking relief for himself or herself. The inherent power of the Court to correct patent injustice also allows relief to be given in this instance.

3.     The failure of Valenti's attorney to respond to the lawsuit will not relieve Valenti from the Default Judgment. *GTE, supra; Blair v. Boye-Doe* (9th Dist. App.), 2004 Ohio 1876, [¶16]. That is the more true because Valenti is herself an attorney.   Valenti's Affidavit does not connect her illness, including the week of hospitalization, to her complete failure to respond to the Complaint for over nine months.

4.     Plaintiff concedes that the Affidavit of Plaintiff's representative, submitted on June 26, 2007, may have been incorrect in reciting that Plaintiff still owned the note and mortgage at issue, since they had been assigned to First Mortgage on June 19, 2007.   But the point is immaterial, since the record accurately reflected the assignment from September 4, 2007 on and Valenti was apparently aware of the assignment from the letter of June 19, 2007, that was attached to her Motion and made no objection concerning it until March 3, 2008.   There was no need to substitute First Mortgage, pursuant to Civ. R. 25.

IV.     **CONCLUSION**

Valenti's Motion for Relief from Judgment is **GRANTED** as to Kutina and the Default Judgment rendered against him on August 9, 2007 is **VACATED.**

5

COPY

Valenti's Motion as to herself is **DENIED.** The Stay Order issued on March 10, 2008 is **VACATED.**

**IT IS SO ORDERED.**

Dated: May 16, 2008

JUDGE ROBERT M. GIPPIN

cc: Attorney Matthew J. Richardson
    Attorney Donald P. Mitchell, Jr.
    Attorney David W. Cliffe
    Summit County Fiscal Officer

6